(32 App. Div. 400.)

### CHASE v. KNICKERBOCKER PHOSPHATE CO. et al.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1. EQUITY—FORFEITURE OF LEASE—SUIT TO REDEEM.
   An action to redeem from a forfeiture of a lease may be maintained in a court of equity having jurisdiction of the person of the defendant, even though the land affected is situated in another state; and in such an action the decree may restrain the defendant from interfering with the plaintiff's possession.

2. SAME—JURISDICTION—ACCOUNTING.
   The fact that a controversy between a landlord and tenant involves complicated accounts, too complex to be tried at law, may warrant a resort to equity.

3. SAME—ASSIGNMENT OF RENTS.
   The assignment of the rents by a landlord, and the tenant's resulting inability to determine to whom they should be paid, warrant a resort to equity to settle the uncertainty.

4. FORFEITURE OF LEASE—DISTRAINT.
   Distraining for rent, after forfeiture, waives the landlord's right of re-entry.

5. SAME—WAIVER.
   If, in an action by the assignee of a lessee for relief from forfeiture, he pays to the landlord, as required by an order making such payment a condition of the granting of relief, an amount admittedly due for rent, but for which, as having accrued prior to the assignment to him, he is not liable, and also agrees to pay any further amount that may be found payable, the landlord's acceptance of the former payment waives any right to claim a forfeiture, except in case of future failure to pay any balance found due.

6. CONSTRUCTION OF LEASE.
   A lease of phosphate lands provided both for royalties to the lessor of 50 cents per ton mined, payable bimonthly, and a payment of $125 monthly, to be credited on royalty account. Held, that the meaning was that each period of two months should be taken by itself, so that any excess of royalties therefor should be paid to the lessor, but, if they fell short of the fixed payments, the latter should be considered the rent for that period.

Appeal from special term.

Suit by William D. Chase against the Knickerbocker Phosphate Company and Albert T. Patrick. From an interlocutory order, and from a final judgment in favor of the plaintiff, defendants appeal. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Eldon Bisbee, for appellants.

Walter S. Logan, for respondent.

CULLEN, J. In November, 1892, one Tatum, the owner of certain phosphate lands in the state of Florida, demised them to one Foote for the term of 20 years. The lease provided that the lessee should erect on the demised property a mining and drying plant of a daily capacity of not less than 100 tons. The lessee agreed to pay the lessor, as royalty, the sum of 50 cents per ton; payment to be made every two months. Upon the completion of the plant, a monthly payment of $125 was to be made during the continuance of the lease, to be credited on the royalty. Foote assigned his interest in the lease to the Foote Commercial Phosphate Company, which entered into possession of the lands, erected the plant thereon, and mined phosphate. This company became insolvent, and on June 26, 1895, in an action in equity in the circuit court of the United States, a receiver of the corporation was appointed. On August 3, 1896, the receiver sold the interest of the company to one Maggie Lewis, who assigned her bid to the plaintiff, William D. Chase; and on November 24, 1896, in pursuance of such sale, the receiver assigned the lease, and transferred the plant and machinery, to the plaintiff. On June 30, 1893, the lessor, Tatum, conveyed the property, subject to the lease, to Warren Tyler, who on January 15, 1894, conveyed to the Polk County National Bank. On May 12, 1894, the bank conveyed to one James N. Darrah, and on the same day Darrah conveyed to the defendant the Knickerbocker Phosphate Company. At the time the premises were in the possession of the receiver, default had been made in the payment of the royalties and monthly payments prescribed by the lease. On the 20th of August, 1896, the defendant the Knickerbocker Phosphate Company obtained an order from a justice of the supreme court of the United States permitting it to take proceedings to evict the receiver for nonpayment of rent, and to distrain upon the personal property on the premises. This order was modified on September 1, 1896, by providing that if a bond was given, conditioned to pay the rent which had accrued on the lease within 10 days after the confirmation of the receiver's sale, then the order of August 20th should stand vacated. This bond was given, but proved worthless. The sale by the receiver was confirmed on October 27, 1896. In October, 1896, Chase paid $325 for taxes on the property. On November 4, 1896, $200 was paid on account of the rent. No other rent was paid until the commencement of this action. On November 28, 1896, the defendant the Knickerbocker Phosphate Company began a proceeding in the circuit court of Florida, in the nature of a distress, to levy upon the machinery, plant, and other property on the demised premises, in satisfaction of the rent. This proceeding is still pending. On the

same day the defendant company instituted a summary proceeding to dispossess the plaintiff on account of nonpayment of rent. This last proceeding did not go to judgment. By arrangement between the defendant company and the plaintiff's agent on whom process was served,—made without the plaintiff's knowledge or assent,—the agent gave up possession of the property to the company. On November 25, 1896, the defendant company brought an action against the plaintiff in the supreme court of this state to cancel the lease for reason of nonpayment of rent and royalties. It should be further stated that on January 10, 1895, the defendant company made its promissory note to one William H. Moore for the sum of $5,000, and, to secure the payment thereof, executed an assignment of all royalties due or to become due to the company by virtue of the lease. This note and the assignment of royalties were subsequently assigned to the defendant Albert T. Patrick. On December 17, 1896, the plaintiff brought this action. The complaint states the foregoing facts, that the plaintiff is ready and willing to pay all rent that may be found due under the lease, that there was a dispute between the parties as to the amount of such rent, and also that, on account of the transfer of the rents to Patrick, he was unable to determine to whom such rent should be paid. The plaintiff prayed judgment that the court ascertain the amount of rent due, and the parties to whom the same was payable, and that upon such payment by the plaintiff the defendants be enjoined from interfering with plaintiff's possession under the lease, or suing him for rents or royalties, or to recover possession of the premises, or prosecuting the proceeding for distress. The defendants answered. After trial, an interlocutory judgment was rendered in favor of the plaintiff, substantially as prayed for in the complaint; and subsequently, on the payment into court by the plaintiff of the amount found due, final judgment was entered to the same effect. When the action was commenced, the plaintiff obtained an injunction restraining the defendants from interfering with his possession, or prosecuting their actions against him. The plaintiff conceded that there was the sum of $4,500 due for rent. As a condition for the continuance of the injunction pendente lite, he was required to pay that sum to the defendants. He complied with this condition, and the defendants accepted the money. The balance of rent found by the court unpaid, after crediting the plaintiff with the sum of $4,500 above mentioned, was $395.50.

The first assault on the judgments below is based on the claim that the courts of this state cannot adjudicate upon the right to lands in Florida. The learned counsel for the appellant concedes that there are cases in which a court of equity may make a decree in personam, "the indirect result of which may be to affect property situate beyond its jurisdiction." This concession does not go far enough. It is settled law that a court of equity will make a decree against parties of whose persons it has obtained jurisdiction, not the indirect but the direct result of which is to transfer the title to land beyond the jurisdiction of the court, provided the parties comply with the decree of the court. This rule is applicable in one class of cases, but not in other classes. The class in which the rule obtains is defined by Chief Justice Marshall in Massie v. Watts, 6 Cranch, 148, where he says,

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree," though a court will not entertain jurisdiction where a naked question of title is involved, or a mere trespass or nuisance on extraterritorial real property is sought to be restrained. Northern Indiana R. Co. v. Michigan Cent. R. Co., 15 How. 233. Numerous cases are to be found where the courts of this state have decreed the specific performance of contracts for the sale of real estate without the state, or trusts connected with such real estate. Ward v. Arredondo, Hopk. Ch. 213; Sutphen v. Fowler, 9 Paige, 280; Newton v. Bronson, 13 N. Y. 587; Gardner v. Ogden, 22 N. Y. 327. So, also, our courts have compelled judgment debtors to turn over lands in another state for the benefit of their creditors. Mitchell v. Bunch, 2 Paige, 606; Bailey v. Ryder, 10 N. Y. 363. A bill to redeem a mortgage of lands in one country may be brought in any court of equity in another country where the proper parties are resident. Story, Eq. Jur. § 1293. This action is substantially to redeem from a forfeiture in a lease. We cannot see that any valid distinction can be drawn between the case of a mortgage and that of a lease. The rights of the parties, and their relations of trust to each other, spring from a contract of lease. The case seems to clearly fall within the rule laid down by Judge Marshall, already cited. Nor did the judgment below go too far, in restraining the defendants from interfering with the plaintiff's possession. A court of equity will confer the final relief of possession, and will decree a defendant to deliver up possession of land to the owner, when such relief is incidental to the main object of the suit, and the action is brought for some object otherwise within equity jurisdiction. Pom. Eq. Jur. § 177. In Sutphen v. Fowler, supra, it is said that:

"The court may decree a specific performance of the contract, and direct a conveyance by the infant, when she arrives at the proper age to enable her to transfer the legal title according to the laws of Michigan, and may authorize him to take and to retain the possession of the premises until that time, if he can obtain possession thereof without suit. In the meantime the court may grant a perpetual injunction, restraining the defendant from disturbing the complainant in such possession."

So we think it may safely be affirmed that wherever the rights of the parties spring from contract, or other trust relations, and are solely of equitable cognizance, a court of equity, having jurisdiction of the person of the parties, will take jurisdiction of their controversy, although the subject of the controversy is land without the jurisdiction of the court, and will afford the parties thereto as complete relief as would be granted in case the land was within the jurisdiction of the court, so far as that result can be accomplished by working on the persons of the defendants.

This brings us to the merits of the controversy. That an action will lie to relieve from a forfeiture accruing by the breach of conditions of the lease, cannot well be denied. McAdam, Landl. & Ten. § 106; Koehler v. Brady, 144 N. Y. 135, 38 N. E. 978; Pom. Eq. Jur. § 453.

The case before us presents two further grounds of appeal to a court of equity: First, the complicated account between the landlord and tenant, too complex to be tried at law (Tayl. Landl. & Ten. § 495); and, second, the assignment of the rents by the landlord to a third party (Id. § 627). The evidence presents a serious dispute of fact, as to whether the assignee of the rent, the defendant Patrick, did make a claim on the plaintiff in hostility to that of the landlord, the phosphate company. The defendants also gave evidence tending to show that they were ready and willing to accept the rent, and that the plaintiff was not able, or at least not willing, to pay them. We think it unnecessary to review at length the evidence on these subjects, nor shall we discuss the effect of the dispossession proceedings in Florida. Two controlling facts establish, in our judgment, the right of the plaintiff to the relief sought: The first is that the defendant company seized the tenant's property for the rent. In Tayl. Landl. & Ten. § 499, it is said:

"But if, after a forfeiture has been incurred, he proceeds to make a distress for rent previously due, he thereby affirms the possession of the tenant, and waives his right to re-enter, because he cannot distrain for rent unless the relation of landlord and tenant continues to exist."

This statement of the law is cited with approval in Conger v. Duryee, 90 N. Y. 595. The second is the receipt by the defendants, after the commencement of the suit, of $4,500 on account of the rent. This amount was less than that found by the court to be due, and less than that to which we think the landlord was entitled. The appellants insist that for this reason the receipt of this sum did not operate as a waiver of the forfeiture which had accrued for the nonpayment of rent. The general rule that the receipt of rent, unless fully paid, does not waive the forfeiture, may be conceded. But the circumstances under which this payment was made are exceptional. The plaintiff, as assignee of the lease, was liable only for the rent which accrued during his possession of the property,—a few hundred dollars. He was in no way personally responsible for the rent that accrued prior to the assignment to him. Under the order of the court, the money paid to the defendants was therefore paid, not on account of any debt from the plaintiff, but as being the amount which he conceded was due on the rent, and which it was necessary to pay as a condition of relief from the forfeiture. In effect, this money was paid by the plaintiff as if saying to the defendants at the time, "Here is your full claim for rent, and I pay it to you as such, subject to the qualification that, if the court determines your claim to be larger, I will pay you the excess." The defendants were not obliged to accept this payment, but when they accepted it they acceded to the terms on which it was paid, and could not thereafter claim a forfeiture, unless the plaintiff subsequently made default in the payment of the balance which the court might find due. We think the acceptance of this sum on account of rent disposed of the whole controversy between the parties, except in one particular, and left for litigation only the question of what was the true amount of the rent.

We are of opinion that the special term erred in its construction of the provisions of the lease in respect to monthly payments and pay-

ments for royalties. The lease provides that the monthly payments of $125 shall be credited on royalty account, but this royalty account was to be settled every two months. The lease was for a long term,— 20 years. The parties never contemplated that the sole return to the lessor should be the monthly sum of $125, for the lessee stipulated that he would erect a plant capable of mining and drying 100 tons of phosphate a day. If the lessee had mined that amount, there would be payable to the landlord about $1,300 a month. It is true, there is no covenant that the lessee will mine that quantity. Still, the lessor expected that the interest of the lessee would dictate the mining of a large amount. As is stated in the lease:

"This monthly payment shall be made to protect the lessor against stoppage of works occasioned by a depressed market for phosphates or breakage of machinery, or any other reasonable cause, and be made as part compensation of said lease, and to be credited on royalty account, as above stated."

In other words, this provision was inserted to secure to the lessor a minimum rent of at least $125 a month for every month during the continuance of the lease. If, however, the royalties for phosphate mined over a long period of time are to be aggregated, and the monthly payment to be computed for the same period, and then credited on the royalties, it may happen that for many months the lessor will receive no return from his property at all. Thus, if, during the first year of the demised term, sufficient phosphate was mined to make the royalties thereon $3,000, for the next year the landlord would not receive a dollar,—at least, if the tenant was in default as to the royalties in a sufficient amount to equal the monthly payments for that year. Practically, that is what has occurred in this case, under the method of computation adopted by the special term. We think the intent of the parties was that each period of two months should be taken by itself; that any excess of royalties above the monthly payments for such two months should be paid to the lessor; but, if the royalties for that period were less than the monthly payments, the amount of the monthly payments should be considered the rent for that time, and the excess of the monthly payments above the royalties should not be carried forward, to be credited on royalties for subsequent mining. This view leads to a recasting of the account, and, unless the parties can agree on the result, a reference will be ordered. We do not think that costs should have been awarded either party at the trial.

The judgment appealed from should be modified by striking therefrom the award of costs, and by directing that the amount due from the plaintiff for rent of the demised premises be ascertained in the manner expressed in this opinion, and that, unless the parties agree as to the result, a reference be had for that purpose; and in all other respects judgment affirmed, without costs of this appeal to either party. Order to be settled on notice. All concur.