ARTHUR FRANK, Suing on Behalf of Himself and All Other Stockholders of American Commercial Alcohol Corporation, Who Are Similarly Situated, Plaintiff, *v.* AMERICAN COMMERCIAL ALCOHOL CORPORATION and Others, Defendants.

Supreme Court, New York County, June, 1934.

*Claude L. Gonnet,* for the plaintiff.

*Patterson, Eagle, Greenough & Day* [*James Lee Kauffman* of counsel], for defendant Kies.

*Chadbourne, Stanchfield & Levy* [*Horace G. Hitchcock* of counsel], for the defendants Brown and others.

*Larkin, Rathbone & Perry* [*Hersey Egginton* and *George D. Mumford* of counsel], for the defendant American Commercial Alcohol Corporation.

COTILLO, J. This is a derivative action instituted by the plaintiff, a minority stockholder of the American Commercial Alcohol Corporation, to compel the individual defendants to account for fraud practiced upon the corporation and its stockholders.

A gist of the charges is that these individuals, who are the controlling officials and directors of the corporation, in April, 1933, formulated a plan whereby, in view of the anticipated repeal of the Eighteenth Amendment, they would form a pool in the common stock of the alcohol corporation on the New York Stock Exchange for the purpose of artificially enhancing the price thereof, and whereby the said individuals by subterfuge and trickery and in violation of the pre-emptive rights of the plaintiff and other common stockholders would cause the alcohol corporation to issue to their dummies for grossly inadequate considerations thousands of shares of its common stock, thus enabling these individuals to dispose of the same to the public at a substantial profit to themselves and to the great detriment of the alcohol corporation and its stockholders.

The complaint alleges in detail how the individual defendants proceeded to carry this scheme into effect, resulting in the issuance to their dummies, who are also defendants, of 25,000 shares of alcohol corporation common stock in exchange for the transfer to the corporation of assets which the defendants in their answers themselves admit were not worth the market value of the shares when issued. (Answers of individual defendants, ¶ X.)

The complaint alleges that in truth not a single one of the 25,000 shares of alcohol corporation stock was ever intended to or actually did reach the hands of the owners of the property so transferred to the alcohol corporation in exchange therefor, but that such property was purchased by the individual defendants for a small cash consideration, and that the 25,000 shares of stock allegedly issued in exchange therefor were in fact sold by the individual defendants at greatly enhanced prices resulting from the operations of the notorious " Alcohol Pool," which forced the price of this stock up from twenty dollars in May to about ninety dollars in the middle of July, 1933.

The complaint also alleges, and it is not denied in the answers, that the plaintiff is a resident of the State of New York and that the corporate defendant was and still is doing business in this State under a certificate issued to it and maintains in the city of New York its principal executive office.

The complaint does not merely seek an accounting for the profits alleged to have been made by the individual defendants, but also an affirmative judgment directing that these profits be turned back to

the corporate defendant and that the individual defendants be enjoined from issuing any shares of the common stock of the corporate defendant, or any other class of stock, bonds or other securities, to themselves or to their dummies, nominees or associates without first offering the same to the common stockholders of the corporate defendant for subscription, except where such stock or securities may lawfully be issued for the *bona fide* acquisition of property or for services, as prescribed in the certificate of incorporation of the corporate defendant.

The answers of the individual defendants and also of the corporate defendant consist not only of denials of various allegations of the complaint but also of a plea of four separate and complete defenses.

The plaintiff has moved under rule 109 to strike out the fourth affirmative defense as insufficient in law. This defense alleges that the corporate defendant is a corporation duly organized and existing under and by virtue of the laws of the State of Maryland and maintained and still maintains an office for the transaction of its business in the city of Baltimore, State of Maryland, where all meetings of the stockholders thereof are held, and that none of its four plants were at any time or are now located in the State of New York; that the said corporate defendant transacted and still transacts its business throughout the United States, including the State of Maryland.

It also alleges that a determination of the issues in this action will require the interpretation of the laws and statutes of the State of Maryland, the validity and effect of the provisions of the certificate of incorporation and by-laws of the corporate defendant, and that there are no controlling decisions of the courts of the State of Maryland. This defense demands that this court decline to take jurisdiction of the action, and the plaintiff challenges the propriety of this demand.

The question raised on this motion is whether the courts of this State will take jurisdiction of a cause which offers to involve the internal management of a foreign corporation in which the basis of the action is the alleged fraudulent acts of the directors and officers, or relegate it to the jurisdiction of the State in which the corporation is a citizen. Counsel for the parties have been of material assistance in developing the law in their briefs. The defendants rely on the decision of *Sauerbrunn* v. *Hartford Life Ins. Co.* (220 N. Y. 363). In its decision the Court of Appeals, writing through HOGAN, J., followed the decision in *Condon* v. *Mutual Reserve Fund Life Assn.* (89 Md. 99; 42 Atl. 944), which held as follows: " It becomes necessary to ascertain what is and what is not a controversy relating solely to the internal management

of a corporation; in other words, what acts are so distinctively acts pertaining to the internal management of a foreign corporation as to preclude an inquiry into them by any tribunal other than the courts of the corporation's domicile.

" The motives with which the acts are done, and the effect they may have upon others when done, are altogether aside from the inquiry; because, if they strictly appertain to the internal government of the corporation, neither motive nor effect can convert them from what they intrinsically are into what they obviously are not and therefore cannot make them cognizable if otherwise they be not cognizable. An act done with a *fraudulent* motive is, as an act, precisely identical with the same act done without such a motive, *in so far as it relates to this jurisdictional question,* because it is the quality or nature of the act, and not the incentive that prompted it, or the effect that it produces, which determine whether it does pertain to the internal management of the corporation or not.

" In the *Fields Case* (64 Md. 151), which has been followed by many other courts of the country, it was said: '' where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, *and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors,* that then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation, our courts will not take jurisdiction. * * * Our courts possess no visitorial power over them [foreign corporations] * * * *nor can they exercise authority over the corporate functions, the by-laws, nor the relations between the corporation and its members, arising out of, and depending upon, the law of its creation.* These powers belong only to the state which created the corporation.' " (Italics the court's.)

The facts in the *Sauerbrunn Case* (*supra*) differ from the facts in the action at bar. In that case the plaintiff sought to restrain a foreign corporation from making an assessment against him. In the present case the plaintiff is seeking to enjoin officers and directors as individuals from perpetrating a fraud and from enjoying the fruits of fraud alleged to have been perpetrated.

The court feels inclined to follow the reasoning in the dissenting opinion in *Cuppy* v. *Ward* (187 App. Div. 625), in which plaintiff sought, as in the present case, to enjoin the directors of a foreign corporation from violating plaintiff's contract and excluding him from the management of the business.. Although the court refused to hold with plaintiff, it did not refuse to do so on the ground that the court had no power to do so, as the majority opinion specifically

states that the case was "not discussed * * * from the view-point that it was a foreign corporation as I [the writer of the prevailing opinion] concur in the opinion of Mr. Justice LAUGHLIN in which that phase of the case is discussed." Judge LAUGHLIN held as follows: "It is a well-settled general rule of equity jurisprudence that the courts of equity of one jurisdiction will not assume jurisdiction of a cause involving the internal affairs and management of a corporation regulated by the statutory law and public policy of a foreign country or a sister state and that such issues will be relegated to the local jurisdiction of the incorporation. (*Hallenborg* v. *Greene*, 66 App. Div. 590; *Butler* v. *Standard Milk Flour Co.*, 146 id. 735; *People ex rel. Ruman* v. *National Slavonic Society*, 144 id. 574; *Gregory* v. *N. Y., L. E. & W. R. R. Co.*, 40 N. J. Eq. 38; *Guilford* v. *Western Union Telegraph Co.*, 59 Minn. 332; *Edwards* v. *Schillinger*, 245 Ill. 231; *Wason* v. *Buzzell*, 181 Mass. 338; *Clark* v. *Mutual Res. Fund L. Assn.*, 14 App. Cas. [D. C.] 154; 43 L. R. A. 390.) (See, also, note 12 R. C. L. § 21, p. 31.) This rule precludes the exercise of jurisdiction to determine the validity of the incorporation of a foreign company, or to dissolve it, or to appoint a general receiver for it, or to control the election of its officers, or to determine the validity of their election, or to remove or reinstate them; and necessarily, I think, precludes the exercise of jurisdiction to control the judgment and discretion of the board of directors of such a corporation with respect to the appointment, removal, or reinstatement of the officers or agents of the corporation.

"It is, however, consistent with this rule for the courts of another jurisdiction to enjoin a fraudulent conspiracy to dissipate the property of a foreign corporation and to call the directors and officers to account for misconduct or negligence, for this is in aid of the corporation and its creditors; and the rule does not preclude enjoining an illegal issue of stock by a board of directors acting within the jurisdiction where the injunction is sought, provided the illegality of the issue of stock depending on the foreign law is clear, or enjoining the depository of stock where the injunction is sought from voting it under a voting trust agreement which has expired (*Miller* v. *Quincy*, 179 N. Y. 294; *Jacobs* v. *Mexican Sugar Refining Co., Ltd.*, 104 App. Div. 242; *Acken* v. *Coughlin*, 103 id. 1; *Weber* v. *Wallerstein, No. 1*, 111 id. 693; *Hallenborg* v. *Greene, supra; Kraft* v. *Griffon Co.*, 82 App. Div. 29; *Butler* v. *Standard Milk Flour Co., supra*), or compelling the transfer of stock on the books of the corporation where it has a transfer office and agency in the jurisdiction to which the application is made. (*Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259.)"

Our own Court of Appeals in *Miller* v. *Quincy* (179 N. Y. 294) held that a director of a foreign corporation doing business in this State could maintain an action against former directors for an accounting and restoration for malfeasance in office. That decision I believe to be controlling here. The court there said (p. 299): " It would necessarily follow from this argument that the directors of a foreign corporation transacting business and having its principal office in this state may plunder the corporation with impunity and the courts of this state are without power to redress such wrongs as appear upon the face of the complaint in this case. If they cannot be sued here * * * unless they come within its jurisdiction. There is no good reason, I think, for holding that the right of a director to bring an action of this character is confined to cases arising with respect to domestic corporations. The language of the statute is broad and general. The purpose of the law and the remedy prescribed is just as applicable to the case at bar as to any other.

" Moreover, it seems to me that the restriction which the learned court below has placed upon the word ' director ' as used in the statute is not only unauthorized by the whole scope and policy of the preceding section, but is contrary to justice and sound policy. It is a matter of common knowledge that hundreds of corporations in this state are organized under the laws of New Jersey, or some adjoining state, but the business and all the operations of the corporation are conducted here, except possibly, once a year, there may be a meeting of the stockholders in the state creating the corporation for the purposes of a new election. In all other respects these corporations stand upon the same footing as though organized here under the laws of this state; and what reason can be given for denying to a director of such a corporation the right to bring an action such as might be brought and maintained by a director of a domestic corporation? The distinction between the two classes of corporations in this respect is simply arbitrary and rests upon no sound reason, or any principle of public policy. * * *

" Bearing always in mind the fact that this is an action by an individual director of a foreign corporation in the courts of this state to compel other individuals who, while directors, had become wrongfully possessed of the corporate funds and property, to account for the same, it is difficult to suggest any sound reason for denying to the plaintiff the relief which he seeks to obtain. * * *

" That would certainly seem to have been the view of Judge CULLEN when discussing a similar case in the Supreme Court (*Ernst* v. *Rutherford & B. S. Gas Co.*, 38 App. Div. 388). It is there said: ' We do not suppose that it was intended by this section

of the Code to give our courts any greater jurisdiction in the case of actions against foreign corporations than they have against natural persons. But the basis of an action for an accounting and restoration against offending officials of a corporation is the trust relation which such officials bear to the corporation and to its stockholders. This gives a court of equity jurisdiction of the subject-matter wherever it can obtain jurisdiction of the persons of the defendants, even though the subject-matter might be real estate lying without the state, (*Chase* v. *Knickerbocker Phosphate Co.*, 32 App. Div. 400), which is not the fact here. The right of the plaintiffs as stockholders to compel a restoration by the officers of the corporation is coextensive with the right of the corporation itself. Surely the corporation would not be confined to the courts of the State which created it, but could pursue its officers in whatever jurisdiction it might find them; otherwise it would be remediless if those officers remained without the State.

" ' The learned judge, however, was of opinion that this action was more than for a restoration and accounting; that it was, in effect, an action to control the internal management of the corporation itself. Concerning an action of the last character he was of opinion that the corporation could only be called to account in the tribunals of the State which created it. We are not prepared to admit the correctness of the proposition as broadly as stated by the learned justice. If the illegal acts of the directors or of the corporation offended solely against the majesty of the State to which it owed its life, in other words, constituted only public wrongs, the proposition is probably correct; for we are not compelled, nor should we entertain actions simply to redress the outraged dignity of foreign governments. But if such illegal acts also cause injury to the property rights of individual stockholders who are citizens of this State, we cannot see why they are not entitled to obtain full relief in our courts, so far as such relief can be accomplished by acting directly on the persons of the defendants. A contrary rule would, in our judgment, be unfortunate at this time, when, for some reason, the majority of corporate enterprises in this State (those of a *quasi* public nature, such as railroads, etc., excepted) are carried on under incorporations effected under the laws of other States. We are of opinion, however, that this action is strictly for restoration and an accounting, and, therefore, that the court had jurisdiction of the subject-matter.'

" In the case at bar the action is for the same purpose; that is, for an accounting and restoration. The plaintiff has summoned the defendants to appear in the courts of this state to answer for their misconduct in misappropriating or wasting the money of a

corporation of which he is a director or trustee. The courts of this state have, I think, the power to require the defendants at the suit of the plaintiff to make good to the corporation the money taken from its treasury and by them misappropriated or wasted."

In the opinion cited the court approved of the decision in *Ernst v. Rutherford & Boiling Springs Gas Co.* (38 App. Div. 388), which held that a minority stockholder could call directors of a foreign corporation to account.

In view of the foregoing the court feels that the plaintiff's motion is well taken and should be granted. Motion granted.