WITHERBEE et al. v. BOWLES et al.

(Supreme Court, Appellate Division, First Department. January 20, 1911.)

1. ACTION (§ 38*)—SINGLE AND ENTIRE CAUSE OF ACTION.

A bill in equity seeking to set aside a sale of stock as illegal and the result of a conspiracy of certain defendants to deprive plaintiffs of stock in a corporation, and seeking to set aside acts of the directors of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation, increasing its capital stock and purchasing property, is bad as it attempts to combine separate causes of action.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 549; Dec. Dig. § 38.*]

2. CORPORATIONS (§ 180*)—FRAUD AS AGAINST MINORITY STOCKHOLDERS—EQUITABLE RELIEF.

Where a majority of the directors and stockholders carry into effect a scheme to defraud the minority stockholders, equity will afford relief.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 665–673; Dec. Dig. § 180.*]

3. CORPORATIONS (§ 320*)—RELIEF AGAINST FRAUDULENT ACTS—RIGHT OF ACTION.

Fraudulent acts of directors or stockholders pursuant to a fraudulent scheme to injure other stockholders will sustain an action by the corporation, or, if it refuses to act, a stockholder may act in its stead, for the benefit of all the injured stockholders, making the corporation a party defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1439; Dec. Dig. § 320.*]

4. CORPORATIONS (§ 320*)—RELIEF AGAINST FRAUDULENT ACTS—ACTION BY STOCKHOLDER.

In such case the party claiming the derivative right must be a stockholder at the time of the commencement of the action.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 320.*]

5. ACTION (§ 45*)—JOINDER OF CAUSES OF ACTION—SETTLEMENT OF CONDITIONS PRECEDENT.

When the right of a party to specific relief is so incumbered that he cannot assert that right against another until he has removed the incumbrance, he cannot include an attempt to get rid of that incumbrance in a suit for specific relief, which he might be entitled to have if the incumbrance were out of the way.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 45.*]

6. CORPORATIONS (§ 320*)—STOCKHOLDERS—RIGHTS OF ACTION.

In an action by former stockholders against the directors of a corporation for fraudulent or wrongful acts of the corporation, complainants to maintain the action must clearly establish their status as stockholders.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 320.*]

7. ACTION (§ 38*)—MISJOINDER.

To make a complaint demurrable upon the ground that two causes of action are improperly joined, it is not necessary that two causes of action should be contained in separate counts and properly numbered.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 38.*]

Scott, J., dissenting.

Appeal from Special Term, New York County.

Action by Alfred S. Witherbee and another against Thomas Bowles and others. Lawrence Dilworth impleaded. From a judgment overruling a demurrer to the complaint, Lawrence Dilworth appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Griggs, Baldwin & Pierce (Martin Conboy, of counsel), for appellant.

William B. Craig (Samuel Untermyer, of counsel, and Abraham Benedict, on the brief), for respondents.

CLARKE, J. The complaint alleges: That the defendant San Toy Mining Company was incorporated under the laws of Maine in December, 1901, with a total authorized capital of $2,500,000, consisting of 2,500,000 shares at $1 each; that it purchased certain valuable mining properties, mentioning them, in Mexico, and in payment duly issued substantially its entire capital stock as full paid and nonassessable, the said property so acquired being fully worth the amount of stock so paid therefor at par. That shortly thereafter the company acquired another property known as the Bustillios mine. That thereafter they entered into possession, and began the transaction of business and the development of said mines. That prior to January 3, 1903, the plaintiffs had become and were the lawful owners of $1,324,-920^{17}/_{33}$ shares. That prior to January 3, 1903, the defendants Bowles, Owings, W. B. Wright, John C. Wright, Lewis, Hadley, and Paxton, hereinafter called the minority stockholders, had been and were the owners of $775,667^{16}/_{33}$ shares. That on said day the minority stockholders entered into an agreement with plaintiffs whereby they jointly sold to the plaintiffs their said shares for $96,406.15, with 6 per cent. interest thereon until paid, payable $5,000 at the execution of the agreement, $5,000 on July 1, 1903, and the balance on or before January 1, 1904. It was further agreed: That the certificates of all of said stock (that is, the minority stockholders' and the plaintiffs' shares) should be deposited with the Milwaukee Trust Company, with the agreement that should the aforesaid purchase price not be paid fully by the plaintiffs on or before January 1, 1904, the trust company might sell all of the stock then in its hands, or so much thereof as might be necessary to make the amount due thereunder to the said minority stockholders, said sale to be at private or public sale upon giving five days' notice in the Milwaukee Sentinal and mailing such notice to each of the parties to the agreement, and out of the proceeds the trust company should pay, first, the expenses of the trust, and then the amount that might be due under the agreement, and should render the surplus, if any, to the plaintiffs. That thereupon the certificates were duly deposited, and the plaintiffs paid to the minority stockholders $5,000 in cash at the execution of the agreement, and thereafter likewise duly paid to the minority stockholders the second sum of $5,000, payable July 1, 1903, and also paid various other sums of money on account of the purchase price of said stock and under said agreement. That thereafter, for a valuable consideration, by mutual agreement, the time for the consummation of the said sale was extended to and included April 15, 1905. That shortly after the incorporation plaintiffs engaged defendant Hutchinson as their agent to aid in effecting sales of blocks of the stock owned by the plaintiffs in defendant company, which plaintiffs contributed to procure funds for the use of said company and to make advances to the said defendant company of said funds realized from sales of plaintiffs' stock, and

of other moneys contributed by the plaintiffs for the purpose, and to protect plaintiffs' interests in the said company and its properties, and the said defendant accepted said employment and acted thereunder, and received of the plaintiffs large sums of money to be advanced to the defendant company. That, in order to assist in effecting sales of stock to procure funds in aid of defendant company and to assist in procuring funds for themselves to aid in making up the amount to be paid to the minority stockholders for their stock under the agreement, plaintiffs retained defendant Sloane as their agent to negotiate sales of stock of said company owned or controlled by plaintiffs, and plaintiffs agreed to compensate him for his services, and said defendant accepted said employment and thereupon became the agent of the plaintiffs. That Joseph Morris, now deceased, and the defendants Richard R. Brown and James E. Brown were copartners under the name of Morris, Brown & Co., and defendant Ward during a portion of such time was either a copartner or financially interested in said firm, and was a brother-in-law of the defendant Schwab. That plaintiffs' said agent Sloane at divers times approached the said firm of Morris, Brown & Co. and the said defendants Brown, members thereof, and the defendants Ward, Gillies, Carnegie, Dilworth, Beggs, Mitchell, and Schwab, and disclosing to them the facts of his agency for the plaintiffs, and as plaintiffs' agent, presented to said defendants various propositions whereunder said last-named defendants should acquire various blocks of stock so owned or controlled by plaintiffs in defendant company. That the said defendants were interested and willing to entertain said propositions and to acquire portions of said stock, but that Sloane in violation of his agency and duties to the plaintiffs, as their agent, formulated a scheme or conspiracy only just discovered by these plaintiffs, and hereinafter more fully set out to cheat and defraud the plaintiffs, and unlawfully to deprive them of their said stock in the defendant company, and of said stock purchased by plaintiffs of said minority stockholders, and the defendant Hutchinson advised, connived, and participated in said conspiracy, and the other defendants, well knowing the premises, either connived with, or acquiesced in, or participated in the fruits of the said company, and hence in law, as plaintiffs are informed and believe, became parties thereto, and accountable and responsible to the plaintiffs for the injuries resulting to the plaintiffs therefrom. That, in furtherance of the objects of said conspiracy, defendant Sloane untruthfully reported to the plaintiffs that none of the aforementioned defendants, and no one whom they could procure, cared to interest themselves in the said defendant company or cared to purchase any of said stock, and notwithstanding the fact that the said minority stockholders had duly extended until April 15, 1905, the time for the final performance of the said agreement, said defendants Sloane and Hutchinson connived with the special aid of the defendant Bellis, and the said minority stockholders, in the interest of themselves and of said defendants, and in the interest and with the knowledge or consent of the other defendants, and under the agreement to divide the fruits of the conspiracy among all the defendants (except the company) to induce and procure the said Milwaukee Trust Company, as agent of said minority stock-

holders, nevertheless, to attempt to make earlier sale of said stock, and finally on April 14, 1905, in the absence of and without due notice to the plaintiffs, and under the claim that there was due from the plaintiffs to said minority stockholders for the balance of the purchase price the sum of $81,851.66 and interest from September 3, 1903, unlawfully to sell at a pretended public sale all of the stock then held under said agreement and aggregating 2,030,735 shares for the pretended consideration of $75,000 bid by or on behalf of said minority stockholders by their agents the defendants Owings and John C. Wright.

Plaintiffs are informed and believe: That said sale was unconscionable, collusive, and void. That it was not advertised in the Milwaukee Sentinal as provided in the agreement. That neither the trust company nor the minority stockholders were authorized to make any sale of said stock because the time for the full performance of said agreement had been by the parties duly extended to April 15, 1905. That the said pretended sale was not in good faith, and that the said minority stockholders well knew that the other defendants were able and willing to pay sums largely in excess of the amount bid for said stock, and that a small portion, if sold in good faith, would have realized the amount so claimed by said minority stockholders, and leave most of said stock or a large overplus in money for the plaintiffs. That the amount of said bid was never paid by the said purchasers, and that they never acquired the said stock. That the certificates were in pursuance of the scheme and conspiracy delivered to the plaintiffs' said agent, defendant Sloane, who, after retaining the portion that the other defendants agreed or acquiesced that he should keep as his share of the fraud, proceeded to make distribution of the balance among the other defendants (except the defendant company), the manner of such distribution and the amount allotted to each of said defendants being unknown to plaintiffs. That prior to the commencement of this action the plaintiffs, as they are informed and believe, tendered to the Milwaukee Trust Company and to the said minority stockholders in legal tender $81,851.66 and lawful interest thereon from September 3, 1903, being the amount claimed as the balance unpaid of the consideration in said agreement provided to be paid said minority stockholders, and then duly demanded of said trust company and said defendants the delivery to the plaintiffs of the certificates deposited under said agreement, and not theretofore withdrawn as therein provided, to wit, 2,030,735 shares, but that said company and minority stockholders refused the said tender, and refused to deliver the certificates or any of them. That the stock of the defendant company so owned by the plaintiffs and deposited under the agreement constitutes a majority of the total duly authorized, issued, and outstanding capital stock of the defendant company, and represents the stock control of the defendant corporation. That, while sales of isolated small amounts of said stock are being made from time to time, the majority of the stock, with its attending control, cannot be had or purchased in the open market, and its value cannot be adequately estimated or ascertained. That the mining properties so acquired by the mining company as aforesaid, and with none of which it has ever parted, are of untold wealth, but of a value which cannot

be fully estimated or ascertained, although plaintiffs are informed and believe that they are worth in excess of $10,000,000, and they may be worth many times that amount on further occupation and development. That the value of the shares of stock to which plaintiffs are entitled under said agreement is therefore unascertainable in an action at law, and that an action at law would not afford the plaintiffs adequate, full, or complete relief, and that such relief cannot be had except by the return of said specific shares of stock to be decreed in a suit in equity. That since said pretended sale defendants in or about January, 1907, in order to strengthen their hold on the shares of said stock, and to more effectually deprive the plaintiffs of the said shares, and hinder and delay the plaintiffs in any attempt to recover the same, formulated, or connived, or acquiesced in, a further scheme or conspiracy against these plaintiffs, under the terms whereof the defendant Schwab, in the name of the defendant Mitchell, who then was and for some years prior thereto had been and still is his agent, attorney, and legal adviser, acquired some title to or claim upon two certain alleged mining properties of little or no value, known, respectively, as La Central and Juarez, and sold and transferred the same to the defendant company for 3,250,000 shares in the defendant company, the defendants for the purpose causing the defendant company to increase the amount of its total authorized stock to $7,000,-000, and causing said defendant to purchase said two properties in form from said defendant Mitchell, and to issue to him certificates for 3,250,000 shares of increased capital stock as full paid and nonassessable, and the defendant Brown, Sloane, Beggs, Dilworth, Hutchinson, Bellis, Chase, and Carnegie, nine of the ten directors and trustees of the company, with knowledge of the facts and without any investigation as to the value of either of said two properties, and in disregard of their duties as such directors and trustees, voting in favor of and carrying out said fraudulent sale and purchase and issue of such stock. That said transaction was a sham. That the defendant Mitchell acted not for himself, but for the defendants, or some of them, or with their knowledge and consent. That he distributed or caused to be distributed the said 3,250,000 shares of increased stock, or substantially all of them, to or among the defendants, or some of them with the knowledge or acquiescence of the others, and largely to his client, the defendant Schwab, and that said transaction was planned and consummated with the intent, among other things, of still depriving the plaintiffs of the control of the defendant company in event of their recovery of the said shares of stock to which they are entitled under the said agreement, and which constituted, and of right and justice should constitute, the control of the company. That, as plaintiffs are informed and believe, the board of directors of the defendant company is constituted of defendants in this suit, and it would be useless to ask them to institute any action, suit, or proceeding for the recognition or enforcement of any of the plaintiffs' rights. That the defendant company, so controlled by said defendants, recognized as valid said sale of said stock by the Milwaukee Trust Company, and said issue of said increased stock, and permits transfers thereof, and has issued and is about to issue new certificates to the transferees,

thereby subjecting the plaintiffs to a multiplicity of suits to enforce their rights at law, even if thereby full relief could be had, which plaintiffs are informed and believe is not the case, and compelling plaintiffs to invoke the aid of this court and its writ of injunction for their adequate relief. That these plaintiffs are able, ready, and willing, and they hereby offer to pay to the defendants, or as this court may decree, the said sum of $81,851.66, the sum heretofore tendered by them to the minority stockholders, with accrued interest thereon, upon delivery by or on behalf of the defendants to the plaintiffs of the said 2,030,735 shares of original stock of the defendant company, and further offer to do any and all further things which equity and good conscience may require and this court direct.

Wherefore plaintiff demands judgment that the said pretended sale held by the Milwaukee Trust Company under said agreement of date of January 3, 1903, may be declared void, and that the defendants and each of them may account for any and all of the said shares that may have come into their hands, and may be decreed to be delivered up to the plaintiffs, and that the defendants may be decreed to account for any and all shares of the increased capital stock so issued to the defendant Mitchell, and that they deliver up the same to the defendant company for cancellation, and that the defendant company may re-transfer to the party entitled thereto said worthless La Central and Juarez properties, to the end that the said original shares may be and constitute a majority of the capital stock, or, if any defendant cannot surrender up to the defendant company all of the shares of said increased stock so received by him, that then such defendant may be decreed to pay to the defendant company the par value of any such shares, delivery whereof he may be unable to make; that the individual defendants may be enjoined and restrained during the pendency of this suit from making any sales or other disposition of any of said shares of stock in the defendant company, and that a receiver of said shares of stock may be appointed during the pendency of this suit; that the defendant company may be restrained from recognizing any such transfers or issuing new certificates to the transferees; that the defendants may be enjoined and restrained from doing any acts in conflict with or prejudicial to the plaintiffs' rights as herein set out; and that the plaintiffs have other and further relief.

To this complaint the defendant Dilworth demurred on the following ground: First. That there is a defect of parties defendant (a) in that all of the directors who participated in the alleged unlawful increase of capital stock are not made parties to the action; (b) in that all the present directors of the corporation are not mentioned as parties defendant; (c) in that all of the stockholders who will be affected by the decrease of stocks bought are not made parties defendant. Second. That causes of action have been improperly united, in that the plaintiffs attempt to set forth a cause of action in their favor because of the fraudulent conspiracy of certain defendants to deprive them of certain stock in the defendant corporation, of which they were the owners, with a cause of action in the nature of a stockholder's suit in favor of the corporation and against the directors for the rescission of a contract relating to the issue of additional capital stock because of

fraudulent overvaluation. The one cause of action, if it exists, is in plaintiffs' individual right, and the second cause of action is in the nature of a cause of action for the benefit of the company, in which any stockholder would have a right to intervene. Third. That the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled upon all three grounds.

We are of the opinion that two causes of action have been attempted to be stated in this complaint: (1) Individual, whereby the plaintiffs seek to have set aside a sale of stock by the Milwaukee Trust Company alleged to have been had in violation of the agreement under which said stock was deposited with said company as illegal, collusive, and void, and accomplished as a result of a conspiracy in which all the defendants, except the defendant company, "either connived with, or acquiesced in, or participated in the fruits" thereof. (2) Representative, in which the action of the directors of the defendant corporation in increasing its capital stock and therewith purchasing certain mining properties is attacked, with a prayer for the delivery up and cancellation of said stock and the revocation of said purchases, and accounting to the defendant company and payment to it of the value of such stock as cannot be surrendered. As to this cause of action, it is evidently one, if it exists at all, in favor of the corporation itself, and the plaintiffs make the usual and appropriate allegations in their complaint justifying a stockholder's action in the right of and for the benefit of the corporation, when the management thereof is hostile to the plaintiffs, and refuses to sue. "Where a majority of the directors, or stockholders, or both, acting in bad faith, carry into effect a scheme which, even if lawful upon its face, is intended to circumvent the minority stockholders and defraud them out of their legal rights, the courts interfere and remedy the wrong. Action on the part of the directors or stockholders, pursuant to a fraudulent scheme designed to injure the other stockholders, will sustain an action by the corporation, or, if it refuses to act, by a stockholder in its stead for the benefit of all the injured stockholders. * * * The right of action, however, belongs to the corporation, and should be brought by it as plaintiff, but, when it will not bring the suit itself, an aggrieved stockholder, after due demand and refusal, or unreasonable neglect to proceed, may bring it in his own name upon making the corporation a party defendant." Flynn v. Brooklyn City R. R. Co., 158 N. Y. 493, 53 N. E. 520.

What is complained of is the action of the corporation through its directors in increasing its capital stock and using said increased stock in the purchase of worthless properties. The relief demanded is that the purchase of the property be revoked and a retransfer thereof made to the vendors; that the increased stock be delivered up for cancellation; that an accounting be decreed for any and all shares of the increased stock issued; and that any such defendant who cannot surrender up to the company all of the shares received by him be decreed to pay to the defendant company the par value thereof. If the acts complained of were wrongful or fraudulent, they were committed by the directors of the company, and such acts were in the first instance wrongful and fraudulent as against it. To the company alone were the directors accountable, and into its treasury must the moneys be

126 N.Y.S.—61

paid. To maintain such an action, the party claiming the derivative right must be a stockholder because it is a cause of action belonging to the corporation, and can be asserted in case it does not itself act only by one possessing a derivative right. The plaintiffs show in the complaint that over three years prior to the commencement of this action their stock had been sold. It is true that by the allegations supporting their individual action they attack such sale, seek to have it declared null and void, and attempt to recover back the stock which they formerly owned. It will not do to say that, if they succeed upon that individual cause of action, they will then be reinvested with the capacity of stockholders and entitled thereafter to proceed with the representative action, combining them both in the same complaint.

In Inman v. New York Interboro Water Co. (C. C.) 131 Fed. 997, the court said:

"The foundation of the complainant's right to the relief demanded is that he owned 100 shares of the original company. * * * There were two certificates, each for 50 shares, which it is claimed were wrongfully disposed of. * * * As against both defendants mentioned, complainant wishes a decree that he is the lawful owner of the stock represented by both certificates held by them, respectively. * * * It is settled law that, when the right of a party to specific relief is so incumbered that he cannot assert that right against another until he has removed the incumbrance, he cannot include an attempt to get rid of the incumbrance in a suit for specific relief, which he might be entitled to have, if the incumbrance were out of the way. 1 Daniels, Ch. Pl. & Pr. (6th Am. Ed.) 339. · Here he wishes to have the stock first called his own, and then have such action taken as might perhaps be demanded if the stock were his own, without question at the time of bringing suit. The position is untenable. * * * These certificates of stock go to the root of the whole matter, and' complainant's clear right to them must be settled absolutely before he can be permitted to assert such right. To settle such right and to ask relief which depends upon the right are two independent, disconnected, and unrelated questions, and the bill which attempts to join them in one suit is multifarious."

In Searles v. Gebbie, 115 App. Div. 778, 101 N. Y. Supp. 199, affirmed 190 N. Y. 533, 83 N. E. 1131, the Appellate Division in the Fourth Department sustained a demurrer to a complaint which contained a cause of action in the personal right of the plaintiff and a second cause of action described by the court as follows:

"The other cause of action is distinctly one in equity. It charges the defendant directors with conspiring to increase the capital stock in an illegal and improper manner and for their personal aggrandizement, to the damage of the plaintiff and other minority stockholders, and asks that they be restrained from consummating their scheme. This remedy must primarily be at the instance of the corporation (Flynn v. Brooklyn City R. R. Co., 158 N. Y. 493, 598, 53 N. E. 520), and the pleader recognized this necessity, for he alleges demand and refusal on the part of the defendant corporation to bring the action. This action, therefore, is only maintainable by the corporation, or, on its refusal, by a complaining stockholder to restrain the perpetration of a fraud which will tend to diminish the value of the corporate assets. * * * We think two causes of action were improperly united."

In Groh v. Flammer, 100 App. Div. 305, 91 N. Y. Supp. 423, Ingraham, J., said:

"There are two distinct causes of action which plaintiff has sought to allege and upon which she asks to recover: One, to set aside the sale of stock and bonds; and the other, to compel the defendant to account for the prop-

erty of the corporation that he has received by virtue of his control of the corporation, acquired by this transfer of stock in violation of what is alleged as an agreement with the plaintiff. It is quite evident that it is the corporation that is entitled to receive the corporate property that the plaintiff, by virtue of his control of the corporation, has improperly diverted to himself or his relations. * * * The plaintiff, individually having disposed of all her stock in the corporation, certainly could not maintain an action for a violation of any duty of the defendant to the corporation. * * * Whether or not the facts alleged are sufficient to sustain the second cause of action need not be determined on this demurrer. It is enough to say that the pleader has sought to unite in one complaint causes of action which cannot be united, and that for that reason the demurrer should have been sustained."

Even assuming that the allegations of the complaint set up such an equitable interest in the stock as would authorize the plaintiffs to assert and maintain the derivative action, yet the complaint is bad as setting up two causes of action—one individual and the other derivative. Whitney v. Fairbanks, 54 Fed. 985; Brown v. Utopia Land Co., 118 App. Div. 365, 103 N. Y. Supp. 50. To make the complaint demurrable upon this ground, it is not necessary that the two causes of action should be contained in separate counts and properly numbered. Goldberg v. Utley, 60 N. Y. 427; Wiles v. Suydam, 64 N. Y. 173. Nor is it necessary that good causes of action should be stated. O'Connor v. Virginia Passenger & Power Co., 184 N. Y. 46, 51, 76 N. E. 1082.

It follows that the interlocutory judgment appealed from should be reversed and the demurrer sustained, with costs in this court and the court below, with leave to the plaintiffs upon payment thereof, and within 20 days after service of the order to be entered hereon, to amend their complaint.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (concurring). I agree with Mr. Justice CLARKE that the demurrer on the ground that causes of action have been improperly united was well taken. It is to be borne in mind that in determining this question the inquiry is not whether two or more causes of action have been well pleaded, but whether the pleader has attempted to set forth two or more causes of action. In the complaint at bar we find allegations appropriate only to a representative cause of action, viz., the futility of calling upon the directors to bring the action in the name of the corporation; and we find a prayer for relief to which the corporation only would be entitled, viz., that the individual defendants account for the value of the new issue of stock thereof where a surrender thereof for cancellation cannot be compelled. These facts and this prayer for relief in conjunction with the other facts pleaded set forth a cause of action in the right of the corporation which cannot be maintained by the plaintiffs in their individual right. I do not agree, however, that it is essential for the plaintiffs to first obtain a judgment reinstating them in their right as stockholders of the company before they can maintain an action for the other relief demanded, or that the cancellation of the new issue of stock and of the contracts by which worthless property was purchased therewith can only be had in an action by the corporation or in a rep-

resentative action. Here all of the acts are charged to have been successive steps in the consummation of a conspiracy planned by the individual defendants to deprive the plaintiffs of their stock and of their majority control in the corporation secured thereby, and, since the owners of all of the stock except that owned by the plaintiffs were parties to the conspiracy, there is no other stockholder situated similarly to the plaintiffs. If all parties who can in any manner be affected by the relief demanded are before the court and have not in good faith and for value acquired vested rights, I see no want of power in a court of equity to grant plaintiffs by a single judgment in this action all the relief for which they pray other than the accounting to the corporation for the value of stock.

SCOTT, J. I dissent. I recognize, of course, the general rule that an action in behalf of a corporation to redress a wrong which affects all of the stockholders equally should be prosecuted by the corporation itself, or by a stockholder suing in right of the corporation, and in behalf of all the stockholders. Plaintiffs, however, are not seeking to maintain a representative action, but seek merely to get back their individual stock freed from the impairment of its value resulting from the wrongful acts of the individual defendants. Their complaint is that defendants having unlawfully acquired plaintiffs' stock, comprising a large majority of the stock of the corporation, thus gained control of the corporation itself, and then transferred to it certain worthless properties, doubling the capital stock and taking all of the newly issued stock themselves. As a result, if the plaintiffs should now recover back their stock, they would receive it greatly depreciated in value because it would constitute a minority instead of a large majority of stock of the company, and represent a correspondingly reduced interest in the property of the company. This is an action by the plaintiffs as individuals to redress a wrong done to their individual property by the individual defendants acting through their unlawfully obtained control of the corporation. I think that such an action will lie, notwithstanding the fact that upon some of the same facts a representative action in the right of the corporation and in behalf of all the stockholders would also lie. There are allegations in the complaint which would be appropriate to a representative action, and are not appropriate to an individual action. These may be rejected as surplusage. The plaintiffs also ask for relief which could be afforded only in a representative action, such as an accounting by defendants, to the corporation. But a complaint is not to be condemned merely because the complainant asks for more relief than he is entitled to. I think that plaintiffs, if they can establish their allegations, are entitled not only to get their property back, but to get it back unimpaired in value by any unlawful act of the defendants, and I further think that they are entitled to full relief in a single action bringing in, as they have apparently done, all interested parties as defendants.