PATRICK H. FLYNN, Appellant, v. THE BROOKLYN CITY RAILROAD COMPANY and THE BROOKLYN HEIGHTS RAILROAD COMPANY, Respondents.

1. APPEAL FROM DISMISSAL OF COMPLAINT ON OPENING — STATE OF FACTS.   For the purpose of an appeal from the dismissal of a complaint on the opening of counsel and upon the ground that the complaint did not state facts sufficient to constitute a cause of action, such facts as could properly have been proved under the allegations of the complaint, when supported by reasonable implication and fair intendment, must be accepted as true, and, in connection with the admissions made upon the opening, must be treated as the facts of the case, upon which the rights of the parties depend.

2. CORPORATIONS — STOCKHOLDER'S REPRESENTATIVE ACTION TO ANNUL STREET RAILROAD LEASE.   Where a plaintiff, suing as a stockholder of a street railroad corporation, claims in his complaint that he has been defrauded of a portion of his interest in the corporate assets by means of a lease made by the directors and approved by the vote of a required number of stockholders, and seeks to set aside the lease, to compel the transfer of all the property covered by the lease, and to require the lessee to account to the lessor for all moneys received from the operation of the

road, the action is not for the benefit of the plaintiff alone, but is representative in character, and for the benefit of the plaintiff and all other stockholders similarly situated.

3. Demand on Corporation to Sue Essential to Stockholder's Action. In such an action, an averment of a demand made upon the corporation to sue, and its refusal or unreasonable neglect so to do, is essential to enable the plaintiff stockholder to sue in his own name.

4. Absence of Allegation of Requisite Demand upon Corporation. A demand upon a street railroad corporation to bring suit to annul a lease of its road, essential to a representative action for that purpose by one of its stockholders in his own name, is not made out by allegations in the stockholder's complaint that he, as such stockholder, had demanded his share of the proceeds of operating the road over and above the rental dividends paid to him under the lease; that he had notified the directors and officers that the lease was unlawful and injured the stockholders, and that he had demanded a distribution among them of all the profits arising from the operation of the road without regard to the lease; followed by the further allegation that such distribution necessarily involved such action on the part of the officers and directors as would effect the annulling of the lease.

*Flynn* v. *Brooklyn City R. R. Co.*, 9 App. Div. 269, affirmed.

(Argued March 16, 1899; decided April 18, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 10, 1896, affirming a judgment entered on an order of the Special Term which dismissed the complaint upon the opening.

This action was brought by the plaintiff as a stockholder of The Brooklyn City Railroad Company to set aside a lease made by it to The Brooklyn Heights Railroad Company, to compel the retransfer of all the property that passed under the lease and for an accounting by the lessee to the lessor.

The record shows that the counsel for the plaintiff opened the case "claiming that by means of the alleged fraudulent scheme set forth in the complaint, the votes of the holders of more than two-thirds of the stock of the defendant, The Brooklyn City Railroad Company, had been given in approval of the lease therein set forth, and admitting, only for the purposes of the argument to dismiss upon the opening, that such vote was given and that plaintiff is the only complaining

stockholder, and that the gravamen of this action is that its said lease is a violation of the duties of its directors, and a fraud upon the said the Brooklyn City Railroad Company, the corporation for the benefit of whose stockholders the plaintiff claims to bring this action in a representative capacity," whereupon the defendants respectively moved, " on the said admissions and statements in said opening and the complaint herein, for a dismissal of the complaint as not stating facts sufficient to constitute a cause of action." The court granted the motion and dismissed the complaint, no application having been made to amend. The Appellate Division affirmed the judgment entered accordingly, all of the justices uniting, but two of them placing their votes upon a ground not concurred in by the majority.

It is alleged in the complaint that the plaintiff owns five hundred shares of the capital stock of the Brooklyn City Railroad Company, which, for many years prior to the 15th of February, 1893, owned and operated a valuable and extensive street surface railroad in the city of Brooklyn and the adjoining towns in Kings and Queens counties. It had constructed tracks through more than one hundred miles of streets, possessed franchises authorizing extensions into many other streets, owned valuable depots, stables, car houses and other structures, besides cars and appliances sufficient for the successful operation of its railroad. The value of its property exceeded thirty millions of dollars, and it was in a position to procure all funds necessary to properly equip and operate its entire system by electricity. Its capital stock was $9,000,000, which was finally increased to $12,000,000, all having been paid in, and for many years its regular dividends were at the rate of 8 per cent. In January, 1892, it had obtained the proper consents for the use of electricity as a motive power, and prior to February 15th, 1893, it was operating by that means. It owned many electric cars, and was engaged in building large power stations, upon its own lands, in order to generate electricity for the operation of its road. The use of electric power, as it was alleged, would result in a

reduction of from thirty to forty per cent in the operating
expenses, as well as in an increase in the number of passengers, owing to the improved facilities, and the company would
thus be enabled to pay dividends of more than ten per cent,
with the certainty of a further increase from the future growth
of the city. Prior to the date last named, certain persons,
composing a so-called syndicate, some of whom were directors
of the company, "entered into a scheme to divest a portion of
the earnings of said company from the stockholders, and, in
pursuance of said scheme, it was planned and arranged that
the railroad of the said company, and its property and franchises should be leased to another company for a consideration
less than the actual rental value thereof, and that a controlling
interest in the stock of said other company should be owned
by the" syndicate "and not by the stockholders of The Brooklyn City Railroad Company, and that the difference between
the actual rental value of the said railroad, property and franchises and the rental paid under the said proposed lease would
thus ensue to the profits of the stockholders of the said other
company, and not to the profit of the stockholders of The Brooklyn City Railroad Company." Pursuant to this scheme the
syndicate acquired by purchase a controlling interest in the stock
of the Brooklyn City Railroad Company, and on the 6th of January, 1893, caused it to issue to the stockholders a proposition,
in the name of the directors, which was in substance that the
syndicate should "procure the leasing of The Brooklyn City
Railroad Company by a street surface railroad company," with
a guarantee of ten per cent dividends on the stock of the
former and the deposit in a trust company of $4,000,000 as
security for the performance of the lease. The lessee was
"to pay and discharge all fixed charges of The Brooklyn City
Railroad Company, including interest on bonded debt, and all
taxes and assessments and license fees, and also pay the
expenses of keeping up the organization of The Brooklyn
City Railroad Company, furnishing it with suitable offices,
etc." The syndicate "was to give the stockholders of The
Brooklyn City Railroad Company the right to purchase

three shares of a traction company's stock of the par value of $100 each, for every ten shares of the par value of $10 each held by the stockholders in the Brooklyn City Railroad Company at the date of the delivery of the lease, at $15 per share," with the option to dispose of said right to purchase. The capital stock of the traction company was to be fixed at $30,000,000, " and this arrangement," as the proposition stated, " will place in the stockholders of the Brooklyn City Railroad Company nine-tenths of the capital of the traction company, the remaining one-tenth will be allotted to the present syndicate, but shall be paid for at the same rate as that purchased by the stockholders of the Brooklyn City Railroad Company." The syndicate, as the directors asserted in their circular, had deposited with the New York Guaranty & Indemnity Company, its representative, the sum of $500,000, " as an earnest of its good faith to carry out the proposition." It was further stated that the board of directors were unanimously of the opinion that the proposition was a most favorable one, and that they unhesitatingly recommended it to the stockholders, who were requested to forward their proxies, so that the lease might be approved by at least two-thirds of the stock " present and voting in person or by proxy," as required by law. No information appears to have been furnished by the directors to the stockholders except such as was contained in the circular.

The complaint further alleged that the defendant, The Brooklyn Heights Railroad Company, is a domestic corporation engaged in operating a railroad upon Montague street, about half a mile long, and that it was controlled by said syndicate. Its bonded indebtedness was $250,000, and its capital stock $200,000, which was worth not more than fifty per cent of its face value. It was not a paying road, and its earnings were less than the operating expenses and fixed charges. Its only property was its franchise upon Montague street, the roadbed, a power house and a few cars, all worth not to exceed $350,000. In order to further carry out the scheme, it was intended to transfer the stock of The Brooklyn

63

Heights Railroad Company to a foreign corporation called a traction company, not authorized by law to own or operate a rail-road. A part of the capital stock of the traction company was to be allotted to such stockholders of The Brooklyn City Railroad Company as might subscribe and pay therefor, the remainder being reserved by the syndicate for its own use. It was charged that the effect of the scheme was "to lease the railroad and property of The Brooklyn City Railroad Company to said foreign corporation and divest a portion of the earnings of said railroad from the stockholders thereof to the" syndicate as the holder "of the said reserved stock of the said Traction Company." It was further alleged that said proposition thus submitted to the stockholders was intended to convey the impression that the proposed lease was to be made to a company with a capital stock of $30,000,000, "whereas, in fact, no street surface railroad corporation with a capital stock of $30,000,000 or any amount approaching that sum, had been incorporated or existed in the state of New York to which" said lease could lawfully be made, "but on the contrary it was in fact intended to lease said railroad and property to the Brooklyn Heights Railroad Company, which was incapable of paying a dividend of ten per cent upon the stock of said Brooklyn City Railroad Company otherwise than from the proceeds of operating the railroad of said last named company under said lease." It was asserted that this scheme "was unlawful, the effect and intent thereof on the part of the shareholders of the Brooklyn City Railroad Company who designed, approved and carried the same into effect * * * being to injure and defraud the shareholders of said company." In pursuance of such scheme the proposed lease was executed by the directors of both railroad companies and approved on the 15th of February, 1893, by stockholders owning two-thirds of the stock of the lessor, which on June 6th, 1893, delivered to the lessee all its property and franchises. Thereupon a foreign corporation known as the Long Island Traction Company was organized with a capital stock of $30,000,000, divided into three hundred thousand shares,

which became the owner of the entire capital stock of the lessee, two hundred and seventy thousand of which shares were allotted to the stockholders of the lessor at $15 per share " in the proportion of three shares of the stock of said Traction Company for every ten shares of " the lessor. The remaining thirty thousand shares were reserved " by certain persons, shareholders of the Brooklyn City Railroad Company, who had approved " said lease, " for their own use and benefit." It was declared that the privilege given to the stockholders of the lessor to purchase stock of the traction company " was in no respect a compensation to " them " for the injury they would receive through said lease; that by the said plan of distributing the said thirty millions of stock of the said Traction Company among the stockholders of the said Brooklyn City Railroad Company, the said stockholders were prevented from receiving the whole amount of said stock and were unjustly and fraudulently deprived of $3,000,000 in par value thereof and of a corresponding portion of the earnings of said Traction Company; that said Traction Company's stock is of no value except as derived from the operation of the railroad of " the lessor under said lease, and the stockholders of that company " are entitled to the full amount of the earnings derived from the operation of its said railroad without any deduction therefrom for the benefit of the intermediate operating concern or company;" that the lessor company " is able to pay a dividend largely in excess of ten per cent upon its present capital stock, that is to say, at least fifteen per cent thereon, and that by the leasing of this railroad, as aforesaid, its stockholders have been and are wrongfully deprived of said increase in said dividends, besides the benefit resulting therefrom and the advantage consequent upon the certain constant increase in the value of the franchises and property of the last-mentioned company through the extension of its road and increase in travel thereon due to the growth of the city from year to year; that this plaintiff, at divers times since the execution of said lease, duly demanded of the Brooklyn City Railroad Company, its officers and

directors, as a stockholder in said Brooklyn City Railroad Company, his share of the proceeds of the operation of the railroad of said company over and above the ten per cent paid to him under said lease, but that the said defendant, The Brooklyn City Railroad Company, has refused and neglected to pay the plaintiff his said portion of said proceeds to which he was legally and properly entitled; that the plaintiff herein has from time to time notified the directors and officers of said Brooklyn City Railroad Company that the leasing aforesaid of the railroad and property of said company was unlawful and to the injury of the stockholders of said company and has demanded that there shall be distributed among the stockholders of said company all the profits and receipts arising from the operation of said railroad and of said property as the same may accrue without regard to the said lease, and that such distribution necessarily involved such action on the part of said officers and directors as would effect the annulling of said lease, but that said directors and officers have failed and neglected to take any proceedings toward the annulling of said lease or agreement."

The relief demanded was that the lease be declared void and set aside, that the lessee be directed to transfer and deliver to the lessor all the property, real and personal, of the latter in the possession of the former, and that it be required to account for all moneys received from the operation of the railroad leased and to pay the same over to the lessor. There was also a prayer for general relief.

The Appellate Division, in affirming the judgment, held that the primary right of action was in the corporation and that it was essential to allege that it had been applied to and had refused to bring the action; that the demand alleged was insufficient, and that, although it did not appear that the lease was illegal, the complaint permitted proof of facts to sustain the allegation of fraud on the part of the majority stockholders.

*Augustus Van Wyck* and *James C. Church* for appellant. The complaint must be treated as if it had been demurred to,

and the sole question before the court is : Does it sufficiently
state a cause of action ? (*Sheridan* v. *Jackson*, 72 N. Y. 170.)
The complaint sufficiently stated a cause of action. (*People*
v. *N. R. S. R. Co.*, 121 N. Y. 614; *Ervin* v. *O. R. & N. Co.*
27 Fed. Rep. 625; *F. L. & T. Co.* v. *N. Y. & N. R. Co.*,
150 N. Y. 410.)   Action lies for such a course of dealing as
is charged in this complaint. (*Leslie* v. *Lorillard*, 110 N. Y.
532; *Hawes* v. *Oakland*, 104 U. S. 450; *Sage* v. *Culver*, 147
N. Y. 245; *Meyer* v. *S. I. Co.*, 7 N. Y. S. R. 245; *Gamble*
v. *Q. C. W. Co.*, 123 N. Y. 98; *Barr* v. *N. Y., L. E. &
W. R. R. Co.*, 125 N. Y. 273; *Currier* v. *N. Y., W. S. &.
B. R. R. Co.*, 35 Hun, 355; *Brinckerhoff* v. *Bostwick*, 88
N. Y. 52; Cook on Stockholders, §§ 684, 694; *Brewer* v. *B.
T. Co.*, 104 Mass. 378; Morawetz on Corp. 417; *Nash* v.
*Hall*, 11 Misc. Rep. 469.)   The technical objections to the
complaint that there was no sufficient allegation of demand
upon the officers and directors of the corporation to bring
suit in the first instance and of a refusal, and that it did not
appear that the plaintiff sued in a representative capacity, are
not well taken. (*Russell* v. *W. W. W. Co.*, L. R. [20 Eq.]
474; *Taylor* v. *Mason*, 9 Wheat. 326; *Sage* v. *Culver*, 147
N. Y. 245.)

*William C. De Witt* and *William C. Trull* for the Brooklyn
City Railroad Company, respondent.   The complaint cannot
stand because it does not contain an allegation that the appel-
lant had made a demand upon the board of directors of the
Brooklyn City Railroad Company to bring an action to annul
the lease, or such an action as he, himself, has brought, and
the board of directors had refused.   And there is nothing in
the facts stated from which the equivalent of such a demand
and refusal can be inferred. (*Leslie* v. *Lorillard*, 31 Hun,
305; *Memphis* v. *Dean*, 8 Wall. 73; *Greaves* v. *Gouge*, 69
N. Y. 154; *Hawes* v. *Oakland*, 104 U. S. 460; *Flynn* v. *B.
C. R. R. Co.*, 9 App. Div. 272.)   An action in equity for
administrative relief against the conduct and transactions of a
corporation, which are not intrinsically *ultra vires*, cannot be

maintained by a single shareholder acting in his individual capacity where his damages are slight and may be easily estimated and recovered in an action at law. (*Shepard* v. *M. R. Co.*, 117 N. Y. 447; *Smith* v. *Swormstedt*, 16 How. [U. S.] 302; *Greaves* v. *Gouge*, 69 N. Y. 157; *Warth* v. *Radde*, 28 How. Pr. 230; *Smith* v. *Rathbun*, 66 Barb. 407; *Brinckerhoff* v. *Bostwick*, 88 N. Y. 60; *Gardiner* v. *Pollard*, 10 Bosw. 677; *Young* v. *Drake*, 8 Hun, 61; *Cunningham* v. *Pell*, 5 Paige, 612; 1 Morawetz on Priv. Corp. § 240; Boone on Corp. § 150; *Wood* v. *Draper*, 4 Abb. Pr. 322; *Louis* v. *Belgard*, 43 N. Y. S. R. 766; *Thomas* v. *M. M. P. Union*, 121 N. Y. 51.) Generally, and upon the merits, the complaint does not state facts sufficient to constitute a cause of action. (*Schofield* v. *Whitelegge*, 49 N. Y. 261; *Knapp* v. *Brooklyn*, 97 N. Y. 520; *Lange* v. *Benedict*, 73 N. Y. 12; *Sheridan* v. *Jackson*, 72 N. Y. 170; *Masterson* v. *Townshend*, 123 N. Y. 458; *Swart* v. *Boughton*, 35 Hun, 281; *Clark* v. *Bowe*, 60 How. Pr. 99; *Ambler* v. *Choteau*, 107 U. S. 591; *Van Weel* v. *Winton*, 115 U. S. 237; *Rich* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 394.) The admission that the lease in question was unanimously authorized by the directors of the Brooklyn Company, and approved by all the stockholders except the plaintiff, is, in view of the plan of lease set forth in the complaint, fatal to the maintenance of this action. (*Gamble* v. *Q. C. W. Co.*, 123 N. Y. 91; *McDougall* v. *Gardner*, L. R. [1 Ch. Div.] 21; *Hawes* v. *Oakland*, 104 U. S. 452.)

*Julien T. Davies, Charles Francis Stone, William F. Sheehan, Charles A. Collin* and *Herbert Barry* for the Brooklyn Heights Railroad Company, respondent. The complaint is fatally defective in that it fails to allege demand by plaintiff upon the corporation to bring an action and refusal of the corporation to comply with such demand. (*Greaves* v. *Gouge*, 69 N. Y. 154; *Leslie* v. *Lorillard*, 104 U. S. 450; *Watson* v. *U. S. S. Refinery*, 34 U. S. App. 81; *Ziegler* v. *L. S. E. R. Co.*, 46 U. S. App. 242; *Wilkie* v. *R., etc., R. Co.*, 12 Hun, 242; *Farrow* v. *H. T. Co.*, 74 Hun, 585, 602;

*Corning* v. *Barrett*, 22 Misc. Rep. 241 ; *Gardiner* v. *Pollard*, 10 Bosw. 674 ; Cook on Corp. [4th ed.] § 740 ; *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52.) The complaint is defective in that the plaintiff sues in an individual capacity for administrative relief, and, further, that he does not sue in behalf of himself and all others who might elect to make themselves parties to the suit. (*Gray* v. *N. Y. & V. S. S. Co.*, 5 T. & C. 224 ; *Greaves* v. *Gouge*, 69 N. Y. 154 ; *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52 ; *Smith* v. *Swormstedt*, 16 How. [U. S.] 288 ; *Smith* v. *Hurd*, 12 Metc. 371 ; *Wood* v. *Draper*, 4 Abb. Pr. 322 ; *Louis* v. *Belgard*, 43 N. Y. S. R. 766.) The complaint does not show a state of facts which would justify interfering with the internal administration and management of the corporation. (*Durfee* v. *O. C. R. R. Co.*, 5 Allen, 242 ; *Hawes* v. *Oakland*, 104 U. S. 456 ; *MacDougall* v. *Gardiner*, L. R. [1 Ch. Div.] 13 ; *Leslie* v. *Lorillard*, 110 N. Y. 519 ; *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 1 ; *Woodruff* v. *E. R. Co.*, 93 N. Y. 616 ; *B. E. R. R. Co.* v. *Nagel*, 75 Hun, 590 ; *P. P. & C. I. R. R. Co.* v. *B., B. & W. E. R. R. Co.*, 84 Hun, 516 ; *Kent* v. *L. S. C. Co.*, 144 U. S. 75 ; *N. T. Co.* v. *Beatty*, L. R. [12 App. Cas.] 589.) The plaintiff is barred by his acquiescence and *laches* from maintaining this suit. (*Calhoun* v. *Millard*, 121 N. Y. 69 ; 2 Morawetz on Priv. Corp. § 630 ; *Kent* v. *Q. M. Co.*, 78 N. Y. 159 ; *S. H. B. Co.* v. *E. H. B. M. Co.*, 90 N. Y. 607 ; *H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252 ; *Skinner* v. *Smith*, 134 N. Y. 240.)

VANN, J. For the purpose of this appeal such facts as could properly have been proved under the allegations of the complaint, when supported by reasonable implication and fair intendment, must be accepted as true, and, in connection with the admissions made upon the opening, must be treated as the facts of the case upon which the rights of the parties depend. (*Marie* v. *Garrison*, 83 N. Y. 14 ; *Kley* v. *Healy*, 127 N. Y. 555 ; *Sage* v. *Culver*, 147 N. Y. 241, 245.) The question of primary importance is whether those facts constitute a cause

of action against the defendants upon the merits, although due regard must be paid to any technical deficiencies that may exist.

The case presented upon the merits is that of a stockholder in a successful, dividend-paying corporation, with large assets and good prospects, who was compelled by the vote of the directors and the other stockholders, induced by fraud, to surrender a part of his interest in the corporate assets repre- sented by his stock, without any real consideration. The stock owned by the plaintiff made him the equitable owner of an undivided fractional part of the entire assets of the com- pany. (*Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 211, 216; *Jermain* v. *Lake Shore & M. S. R. Co.*, 91 N. Y. 483, 492.)

By the lease he was forced to part with one-tenth of his interest without a corresponding advantage. The lessor com- pany in which he was interested transferred all its rights and property to an irresponsible lessee, with inadequate security, for the privilege of buying back a part only of that property and paying a premium therefor. Leaving out of view for the present the security furnished, and we have the lessor part- ing with all it had for the right to buy back nine-tenths thereof and pay over $4,000,000 for the bargain. The stock- holders got nothing except a part of their own property and paid heavily for the privilege. They parted with property of immense value for stock in a traction company with no assets and without a dollar of paid-up capital, and in addition were: compelled to pay $15 for every share given them. The syndi- cate on the other hand paid nothing for their shares of the par value of $3,000,000, except $15 a share, which every stock- holder of the lessor had to pay, in addition to parting with his interest in a paying corporation with $30,000,000 worth of property. The profits of the syndicate in the transaction itself were over $2,000,000, and its prospective profits were nearly $500,000 a year. A solvent and powerful lessor gave every thing it had to an insolvent and weak lessee, and received in payment a part of its own property, paying a premium even

for that right.  There was no substance to any of the three companies except what was furnished by the lessor, and the scheme, in effect, was to divide up its property and donate a part of it to the syndicate.  There was no exchange of properties, but simply a division of the substantial property owned by the lessor.  The lessee contributed nothing and the syndicate contributed nothing, except as it paid $15 a share for the stock of the traction company, the same as the stockholders of the lessor were compelled to do.  The scheme did not involve a consolidation of two valuable properties, which, by uniting, would be able to earn more at less expense, but it involved a surrender by the lessor of part of its own with nothing to speak of in return.  The little railroad, with nominal assets, swallowed the big railroad with assets exceeding $30,000,000, and the traction company, with no assets whatever, swallowed both, and it is claimed that this scheme is not fraudulent as to a protesting stockholder of the road making the sacrifice.  None of the three corporations involved had anything to lose except the lessor.  One of them had nothing whatever, and another had so little that it is not worth mentioning in comparison with the splendid property successfully managed and paying a great profit that belonged to the lessor.  The sham traction company, with no assets whatever, and the dummy lessee, with but trifling assets, had no substance except what they sucked as parasites from the lessor.  The traction company got its first assets in the $15 a share paid for its stock by the stockholders of the lessor, and the traction company's promoters got $3,000,000 for $450,000.

But, it is said, the stockholders of the lessor get ten per cent dividends guaranteed and secured for all time in place of the eight per cent they had before.  What do they get it out of ?  Their own property, capable as we must assume of paying fifteen per cent instead of ten.  Now we come to the only value furnished by the syndicate, and that is security for the payment of the ten per cent dividends by the deposit of $4,000,000.  How long will that last under unsuccessful or dishonest management by trustees incompetent or willing to

wreck in order to make money? Security is furnished for
less than five years' rental on a lease for nine hundred and
ninety-nine years. While the amount of the security seems
large in one sense, in fact it is small when the magnitude of
the risk is considered. The syndicate received over two and
one-half millions of dollars for furnishing a guaranty that a
road capable of earning and paying dividends of fifteen per
cent would pay dividends of ten per cent. Moreover, the
syndicate did not furnish any security whatever except in
form, for the substance came from the stockholders of the
lessor through their subscriptions to the capital stock of the
traction company. The guaranty fund was four millions
of dollars, but the subscriptions of the stockholders to the
stock of the traction company was more than four millions
of dollars. The stockholders of the lessor, therefore, fur-
nished a larger fund than was required for the deposit with the
guaranty company, and that this fund was the source of that
deposit might have been proved upon the trial under the facts
alleged. The syndicate furnished nothing and risked nothing,
and its enormous profits were simply contributed by the stock-
holders of the lessor, the contribution of the plaintiff having
been extorted by a two-thirds vote. The scheme in its final
analysis took something for nothing, and if not fraudulent
upon its face as to a non-assenting stockholder, was fraudulent
under the allegations of the complaint.

It is distinctly alleged that the scheme of leasing the road
was unlawful, and that the intent and effect thereof on the
part of the stockholders of the lessor, who designed, approved
and carried the same into effect, was to injure and defraud the
stockholders of that company. The motive and object of the
stockholders who approved the lease by their votes are charged
to have been furtive and evil, and the effect of their action
injurious and fraudulent. The method of accomplishing the
fraud was set forth, and the complaint, which was amplified
somewhat by the opening, asserted that the syndicate, com-
posed in part of directors of the lessor, and in control of both
lessor and lessee when the lease was made, devised and exe-

cuted a plan to take away property of the stockholders and
give it to third persons.    While the complaint is not as defi-
nite as it might be, so far as appears, there was no motion made
by the defendants to make it more definite or certain.    No
bill of particulars was called for, nor was further information
sought by any of the methods authorized by the settled
practice.    When a party goes to trial upon a loose pleading
without any effort to have it made more definite, he can make
no lawful complaint if 'under the general allegations all facts
fairly covered thereby are admitted in evidence against him.
We think that under the allegations of the complaint before
us every fact bearing upon the intention of the stockholders
who approved the lease to defraud the minority stockholders
could have properly been received.

As a general rule courts have nothing to do with the inter-  ·
nal management of business corporations.    Whatever may
lawfully be done by the directors or stockholders, acting
through majorities prescribed by law, must of necessity be
submitted to by the minority, for corporations can be con-
ducted upon no other basis.    All questions within the scope
of the corporate powers which relate to the policy of admin-
istration, to the expediency of proposed measures, or to the
consideration of contracts, provided it is not so grossly inade-
quate as to be evidence of fraud, are beyond the province of
the courts.    The minority directors or stockholders cannot
come into court upon allegations of a want of judgment or
lack of efficiency on the part of the majority and change the
course of administration.    Corporate elections furnish the
only remedy for internal dissensions, as the majority must
rule so long as it keeps within the powers conferred by the
charter.

To these general rules, however, there are some exceptions,
and the most important is that founded on fraud.    While
courts cannot compel directors or stockholders, proceeding by
the vote of a majority, to act wisely, they can compel them to
act honestly, or undo their work if they act otherwise.    Where a
majority of the directors, or stockholders, or both, acting in bad

faith, carry into effect a scheme which, even if lawful upon its face, is intended to circumvent the minority stockholders and defraud them out of their legal rights, the courts interfere and remedy the wrong. Action on the part of directors or stockholders, pursuant to a fraudulent scheme designed to injure the other stockholders, will sustain an action by the corporation, or, if it refuses to act, by a stockholder in its stead for the benefit of all the injured stockholders. (*Leslie* v. *Lorillard*, 110 N. Y. 519, 535; *Gamble* v. *Queens County Water Co.*, 123 N. Y. 91; *Sage* v. *Culver*, 147 N. Y. 245; *Farmers' Loan & Trust Co.* v. *N. Y. & N. Ry. Co.*, 150 N. Y. 410; *Hawes* v. *Oakland*, 104 U. S. 450.) When a contract founded in fraud is executed by the directors with a third party upon the express approval of a required number of stockholders, with the intention on the part of all concerned to defraud the non-assenting stockholders, and the scheme will naturally result in serious injury to them or to the corporation, a court of equity will set aside the fraudulent transaction and compel the delinquent parties to account. Such is the case before us as we interpret the complaint.

The right of action, however, belongs to the corporation, and should be brought by it as plaintiff, but when it will not bring the suit itself, an aggrieved stockholder, after due demand and a refusal, or unreasonable neglect to proceed, may bring it in his own name upon making the corporation a party defendant. (*Greaves* v. *Gauge*, 69 N. Y. 154.) Such an action is not for the benefit of the plaintiff alone, but is representative in character and for the benefit of himself and all other stockholders similarly situated. In the case last cited it was held that, when a stockholder brings an action of the kind under consideration, the complaint should allege that the corporation, on being applied to, refused to prosecute, and that this averment constitutes an essential element of the cause of action. The complaint before us does not set forth a demand that the corporation should bring an action to annul the lease. The plaintiff alleges that, as a stockholder of the Brooklyn City Railroad Company, he demanded his share

of the proceeds of operating the road over and above the ten per cent paid to him under the lease; that he notified the directors and officers that the lease was unlawful and injured the stockholders, and demanded a distribution among them of all the profits and receipts arising from the operation of the road without regard to the lease. He follows this with the further allegation that such distribution necessarily involved such action on the part of the officers and directors as would effect the annulling of the lease. This did not meet the requirements of the situation, because no demand was made that the corporation bring an action to annul the lease. The demand was either of a payment to the plaintiff of what he deemed he was entitled to, or of a distribution among the stockholders of what he deemed they were entitled to. These demands might have been complied with simply by the payment of money without the bringing of an action. They were not necessarily inconsistent with the continuance of the lease. He was not entitled to what he demanded, and he made no demand of what he was entitled to. *Non constat* if he had made a proper demand this action would have been unnecessary, as the corporation would have done its duty by suing to annul the lease, for it does not appear that it is still under such control as to make a demand useless, as held in *Sage* v. *Culver* (*supra*). The averments relating to the subject of demand are not aided by the allegation that the distribution demanded involved such action as would effect the annulling of the lease, for that was not a fact, but an argument or legal conclusion which does not warrant the introduction of evidence.

We agree with the learned judges of the Appellate Division that the demand was insufficient to meet the requirements of law and for that reason we affirm their judgment.

All concur (PARKER, Ch. J., BARTLETT and HAIGHT, JJ., on the ground that the demand to bring the action was insufficient to meet the requirements of the law), except GRAY. J., not sitting.

Judgment affirmed, with costs.