Harry B. Frank, J.
This case has, in truth, been a most difficult one for the court to resolve, for beneath these judicial robes beats the heart of a Giant fan. As the spring breezes bring closer “opening day ” of the great American pastime, nostalgic memories spring sharply into focus — from the far past the unsurpassed exploits of “Iron Man ” McGinnity, Roger Bresnahan, Christy Mathewson, “ Chief” Meyers, and Rogers Hornsby, and closer to our own times, the glory of 10 pennants under the great John McGraw, the inimitable ' ‘ screwball ” of Carl Hubbell, affable Mel Ott, that less than speedy Ernie Lombardi, the irrepressible Willie Mays, and the drama of Bobby Thomson’s winning home run in the 1951 playoff against the “Bums” to carry on the tradition. A wave of regret wells up at the thought that the Polo Grounds will cease to be the repository of these memories, the only tangible remains of glorious yesterdays, and that no more will the clarion call “ Play Ball ” echo from Coogan’s Bluff. It is truly an American phenomenon that “ a game” can reduce to equality in emotional frenzy all within its grasp from Chief Executive to humblest citizen. Indeed, when the count is three and two, the Sputniks and Vanguards fade into insignificance beside that tiny whirling sphere that orbits 60 feet from its Cape Canaveral at the mound to the unknown at the plate. The court readily admits that its sympathies lie wholly with that “ dyed-in-the-wool Giant fan ” who is the plaintiff herein and fully understands the emotional upset experienced by him. And so, it is with heaviness of heart that the court, as distinguished from the fan, must find that plaintiff’s contentions, while sentimentally “ four baggers ”, are legally “ outs ”.
Turning to the less emotional arena of the lawsuit, the evidence indicates that the plaintiff is, and has been for the past five years, the owner of 10 shares of preferred and 10 shares *539 of common stock of the National Exhibition Company (hereinafter referred to as “National”), the defendant corporation herein. National is a foreign corporation, organized under the laws of the State of New Jersey, and licensed to do business in the State of New York and elsewhere. Its principal offices are located in the borough of Manhattan in New York City. The corporation owns and controls the major league baseball team known as the New York Giants, and it owns and controls a franchise for the operation of a major league baseball team, which up to August 19,1957, and for 51 years prior thereto, was for the operation of such a team in the city of New York. On August 19, the board of directors of the corporation met and voted to transfer the franchise from the city of New York to the city of San Francisco. As a result of such transfer National will lose the right to operate a major league team in New York City as long as it operates such a team in San Francisco. It is conceded that no stockholders’ meeting was ever called to vote upon the proposed transfer, and that no such meeting was contemplated by the board.
The instant action is brought against National and all of its directors, but service was effected only upon the corporation and upon Edgar Feeley, a director and the treasurer of the corporation, and the action proceeds only against them. Plaintiff seeks broad injunctive relief and requests, among other things, that the court enjoin the removal of the franchise and any negotiations incidental thereto. A motion for a temporary injunction was denied. The record indicates that most of the acts which plaintiff seeks to enjoin have already been accomplished.
The complaint is very loosely drawn and it is very difficult to ascertain from it exactly what rights the plaintiff seeks to assert, and what damage has been sustained by him. In form, the action appears to be brought by the plaintiff individually, but aside from some peripheral allegations attempting to set forth some intangible injury to plaintiff, and numerous others, as “ fans ”, the damage alleged is to the “ business and affairs of the corporation ”, and to the “ plaintiff as a stockholder, and all other stockholders similarly situated”. The specific act complained of is the transfer of the franchise of the Giants from New York to San Francisco by the board of directors without obtaining the approval of the stockholders. The complaint is liberally sprinkled with conclusory references to an “ illegal plan and conspiracy ”.
On the trial, plaintiff indicated that he was proceeding on two grounds: (1) waste and mismanagement of the corporate *540 assets on the part of the directors and, (2) that the transfer of the franchise was such an extraordinary corporate act as to require the approval of the stockholders pursuant to section 20 of the Stock Corporation Law of this State.
Although the point has not been raised by counsel, since defendant corporation is not a domestic corporation, it should be noted that while as a general rule our courts will decline jurisdiction in cases involving regulation and management of the internal affairs of foreign corporations (see Langfelder v. Universal Labs., 293 N. Y. 200; Cohn v. Mishkoff Costello Co., 256 N. Y. 102), the rule is otherwise where the fiduciary relationship is attacked (Blaustein v. Pan American Petroleum & Transp. Co., 174 Misc. 601, 658, 659; Knobel v. Haiti Commerce Co., 89 N. Y. S. 2d 612). Jurisdiction has been retained in suits for the breach of fiduciary duty resulting in waste of corporate assets (Goldstein v. Lightner, 266 App. Div. 357, affd. 292 N. Y. 670) and to enjoin fraudulent conspiracies to dissipate corporate property and call directors and officers to account for misconduct or negligence (Frank v. American Commercial Alcohol Co., 152 Misc. 123; Tarlow v. Archbell, 47 N. Y. S. 2d 3; North v. Ringling, 187 Misc. 621).
The proof at the trial consisted of certain stipulations of fact, the testimony of defendant Edgar P. Feeley, and the affidavit of defendant Feeley which was submitted in opposition to plaintiff’s motion for a temporary injunction. The record shows that as a result of the transfer National will be liable on the remainder of the lease which it has at the Polo Grounds, which lease expires on April 30, 1962, calling for a rental of over $55,000 per annum, plus real estate taxes, but with rights to sublet and use for exhibitions of other kinds; that the corporation will be required to pay to the Pacific Coast League about $400,000 for the invasion of that league’s territory; that it will have to pay $75,000 to the Boston Eed Sox for relocation of the San Francisco Seals; and that moving expenses were incurred to the extent of about $9,000. The record also sets forth the profits made by the corporation in its operation of the Giant baseball team for the past several years and, in addition, indicates that the transfer has, in fact, already taken place, both by reason of the action of the National League, which controls baseball insofar as the National Exhibition Company is concerned, and further, by reason of the actual transfer of most of the equipment and assets to San Francisco. No evidence whatsoever was presented at the trial to establish that plaintiff sustained any direct personal loss by reason of the transfer of the franchise. All the evidence bore on the question of the *541 economic feasibility of the transfer as it affected the corporation.
“A stockholder may only proceed in a direct action when he personally has suffered a direct wrong, depreciating the value of his stock, directly traceable to breach of contract by an officer or director.” (Diamond v. Davis, 60 N. Y. S. 2d 375.) Waste, mismanagement, and interference with the corporation’s business are wrongs only to the corporation and must be redressed by means of a suit by or in behalf of the corporation, and even where the wrongs complained of result in depreciation in value of the stock of the corporation, the wrong is still to the corporation rather than an individual stockholder sustaining a loss as a result of such depreciation in value and the proper remedy is a stockholder’s derivative action (Niles v. New York Cent. & Hudson Riv. R. R. Co., 176 N. Y. 119; General Rubber Co. v. Benedict, 215 N. Y. 18, 22; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121; Manowits v. Colorado Mining Corp., 135 N. Y. S. 2d 714).
And similarly, when there has been a failure to comply with section 20 of the Stock Corporation Law, in a proper case, the action which accrues belongs to the corporation and must be brought derivatively (Bassett v. Battle, 253 App. Div. 893).
So here, if the pleadings are strictly construed and the action is viewed as one broug’ht by the plaintiff in an individual capacity, he has unquestionably failed to make out a cause of action, either on his pleadings, or in Ms proof, for the rights which he seeks to assert do not inure to him as an individual, but only to the corporation, and can only be brought in behalf of the corporation.
And even assuming that the necessary motions to amend as to form had been made (see Glabman v. Comic Mag. Distrs., 89 N. Y. S. 2d 449) and that by giving the plaintiff the benefit of every possible inference the necessary elements and character of a derivative suit are established (cf. Bako Realty v. Hays, 153 N. Y. S. 2d 442), and treating the action as if it had been brought in the right of the corporation, the same result would ensue on the merits.
The record indicates that the considerations which influenced the decision were: (1) the expiration of the.present lease on the Polo Grounds in 1962 with no option in the lease for continuation; (2) lack of adequate transportation to and parking facilities at the Polo Grounds; (3) the antiquated condition of the Polo Grounds; (4) that the time to move was propitious because it was known that the City of San Francisco was seeking a major league baseball team for its city, and this would *542 permit the Giants to invade “virgin territory ’ ’; (5) that the Giants would profit financially because there would be no competition from other “ home teams ” in San Francisco; (6) that the expenses of maintenance in San Francisco would be considerably less than presently expended at the Polo Grounds ; (7) that there would be substantial tax savings incident to the removal; (8) that a five million dollar bond issue had been approved by the voters of San Francisco for erection of a new stadium offering sufficient parking facilities and with seating-space comparable to the Polo Grounds, and (9) advantageous television and radio rights — all to the financial advantage of the corporation. Mr. Feeley conceded that the Giants would necessarily incur the liabilities hereinbefore referred to by reason of the transfer. He also testified to the fact that the advance sales up to the time of the trial for the forthcoming season would insure an annual net profit to the corporation well in excess of $200,000.
An evaluation of the evidence indicates that the transfer of the franchise from New York to San Francisco was undertaken in anticipation of financial gain for the corporation. Indeed, it appears that the action of the board was designed to insure .that the major asset “the team” be put to its most efficient economic use for the advantage of the corporation and consequently the stockholders. The record is bare of any evidence .to establish that the action of the board was tainted in any way with fraud or bad faith, or for the personal advantage of the directors. What in effect the plaintiff seeks to do is to question the efficacy of a business judgment of the board of directors. He cannot secure such relief in a court of equity. “ Regardless of the ultimate results of a particular corporate transaction, all that the law requires is that it shall have been initiated and consummated honestly and in good faith. In the management of corporate affairs directors and officers have a wide measure of discretion. Mere differences of judgment are not sufficient to warrant equity interference. Leslie v. Lorillard, 110 N. Y. 519, 532, 18 N. E. 363, 365, 1 L. R. A. 456; Flynn v. Brooklyn City R. Co., 158 N. Y. 493, 507, 53 N. E. 520, 524; Pollitz v. Wabash R. Co., 207 N. Y. 113, 124, 100 N. E. 721, 723; Rous v. Carlisle, 261 App. Div. 432, 434, 26 N. Y. S. 2d 197, 200 ; Holmes v. St. Joseph Lead Co., 84 Misc. 278, 147 N. Y. S. 104, affirmed 163 App. Div. 885, 147 N. Y. S. 1117. As the Court of Appeals stated it in the Flynn case, supra: 'As a general rule, courts have nothing to do with the internal management of business corporations. Whatever may lawfully be done by the directors or stockholders, acting through majorities prescribed *543 by law, must of necessity be submitted to by the minority, for corporations can be conducted upon no other basis. All questions within the scope of the corporate powers which relate to the policy of administration, to the expediency of proposed measures, or to the consideration of contracts, provided it is not so grossly inadequate as to be evidence of fraud, are beyond the province of the courts. The minority directors or stockholders cannot come into court, upon allegations of a want of judgment or lack of efficiency on the part of the majority, and change the course of administration. Corporate elections furnish the only remedy for internal dissensions, as the majority must rule so long as it keeps within the powers conferred by the charter,’ at page 507 of 158 N. Y., at page 524 of 53 N. E.” (Diston v. Loucks, 62 N. Y. S. 2d 138, 145.)
Thus, it clearly appears that even if this action were properly brought as a derivative one, plaintiff has failed to establish facts sufficient to constitute a cause of action for waste and mismanagement of the corporate assets.
Plaintiff’s major contention at the trial was that the transfer of the franchise was such an extraordinary corporate act as to require approval of the stockholders pursuant to section 20 of the Stock Corporation Law of the State of New York. However, it does not appear to this court that section 20 applies to a foreign corporation. (Cf. Wattley v. National Drug Store Corp., 122 Misc. 533; see Simons v. Canada Dry Ginger Ale, N. Y. L. J., Jan. 10, 1942, col. 6 which holds section 21 of the Stock Corporation Law of New York inapplicable to a foreign corporation. Section 21 must be construed with section 20. Matter of O’Hara, 133 Misc. 184.)
Neither side has cited the law of the State of New Jersey with regard to any comparable statute. However, the court on its own motion may, under section 344-a of the Civil Practice Act, take judicial notice of the statutes of a sister State. (See Pfleuger v. Pfleuger, 304 N. Y. 148.) The New Jersey statute comparable to section 20 of our Stock Corporation Law is section 14:3-5 of the General Corporations Law of the State of New Jersey. The pertinent provisions .are as follows: “ 14:3-5. Sale or exchange of property and assets. Any corporation organized under this title * * * may, by action taken at a meeting of its board of directors, sell or exchange all or substantially all of its property and assets, including its goodwill, upon such terms and conditions and for such considerations, which may be in whole or in part shares of stock or other securities, or both, of any other corporation or corporations as its board of directors deems expedient and for the *544 best interests of the corporation, when and as authorized by the affirmative vote of two-thirds in interest of the holders of each class of stock having voting powers on the proposal given at a stockholders ’ meeting duly called for that purpose, or when authorized by the written consent of two-thirds in interest of the holders of each class of stock having voting powers on the proposal.” Provision is also made for appraisal of the stock, as in the New York statute. By its terms and by judicial interpretation the statute applies to a sale or exchange of “ all or substantially all of its property and assets ”, or conversely “ if the sale is such as to deprive the corporation of accomplishing the purposes or objects for which it was incorporated, the statute is applicable and operates to render the sale invalid if not complied with ” (Beck v. Edwards & Lewis, 141 N. J. Eq. 326; Ann. 9 A. L. R 2d 1309,1310).
Plaintiff seeks to equate the transfer of the franchise from one city to another to “ a sale of all or substantially all of the property and assets of the corporation ”. There was no sale of any corporate property or assets here, nor was there a transfer of any assets out of the hands of the corporation. The purposes for which this corporation was organized include the holding of “Athletic Exhibitions ”, and the certificate of organization places no geographic limits thereon. The business of this corporation is the operation of a major league baseball team under a National League franchise. That activity will still continue. The only effect of the transfer will be to change the locale where certain of the games will be played. Clearly, this in no way deprives the corporation of accomplishing the purposes and objects for which it was incorporated. The section is inapplicable under these facts and plaintiff’s attempt to invoke such a provision is a thinly veiled guise to attack a transaction that he considers ‘ ‘ speculative ’ ’. This he cannot do. The management of the business of the corporation is vested in its board of directors (N. J. General Corporations Law, § 14:7-1).
‘ ‘ Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation, and, in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors if their powers are without limitation and free *545 from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation.” (Ellerman v. Chicago Junction Rys. & Co., 49 N. J. Eq. 217, 232. See, also, Merriman v. National Zinc Corp., 82 N. J. Eq. 493; Farmers Loan & Trust Co. v. Hewitt, 94 N. J. Eq. 65; Kelly v. Kelly-Springfield Tire Co., 106 N. J. Eq. 545; Madsen v. Burns Bros., 108 N. J. Eq. 275; Ace Bus Trans. Co. v. South Hudson County Blvd. Bus Owners Assn., 118 N. J. Eq. 31.)
‘ ‘ The corporation is perfectly solvent and the authority of the directors when exercised in good faith and within the law should be regarded as absolute. It is a well settled rule of law that questions of business policy devolve upon the officers and directors who are elected by the stockholders for the precise purpose of determining such problems. It is peculiarly their duty and prerogative to evaluate the business outlook, and while the court may not be as sanguine as they, the substitution of its judgment for that of the chosen managers of the business is not justified in the circumstances here disclosed.” (Laredef Corp. v. Federal Seaboard Terra Cotta Corp., 131 N. J. Eq. 368, 374.)
A review of the New York authorities indicates that were section 20 of the Stock Corporation Law to be considered, it, too, would be inapplicable to the facts set forth herein. (See Eisen v. Post, 3 N Y 2d 518; Matter of Miglietta, 287 N. Y. 246; Matter of Avard, 5 Misc 2d 817.)
While immaterial to the determinations herein, it might be noted that plaintiff’s fears with regard to the economic unfeasibility of the transfer appear to be wholly unfounded. While the corporation will no longer realize the steady annual return from the box in section 19 of the Polo Grounds which this Giant fan has so happily occupied for many years, the evidence indicates that the transfer will undoubtedly operate to the economic advantage of the corporation, and accordingly to its stockholders.
The complaint is dismissed and judgment granted for the defendants, without costs.
Submit decree accordingly.