Norman ZEILER, Plaintiff,

v.

WORK WEAR CORPORATION, Defendant.

No. 76 Civ. 4790 (HFW).

United States District Court, S. D. New York.

April 7, 1978.

Cunningham & Kaming, P. C., New York City, for plaintiff; Marc S. Krieg, New York City, of counsel.

Meyer, English, Cianciulli & Peirez, P. C., Mineola, N. Y., for defendant; Bernard S. Meyer, Jeffrey G. Stark, Mineola, N. Y., of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiff Norman Zeiler brings this action to recover principal and accrued interest on a series of 5% convertible subordinated debentures (the Debentures) which were issued to him by defendant Work Wear Corporation (Work Wear). Zeiler alleges that the occurrence of several specified events of default entitles him to accelerate Work Wear's obligations under the provisions of the debentures. The matter comes before the Court on Work Wear's motion for judgment· on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure, but inasmuch as both parties have submitted affidavits with their papers, that motion has been treated as one for summary judgment under Rule 56(b), in accordance with Rule 12(c), Fed.R.Civ.P.

The circumstances giving rise to this lawsuit are as follows: In June of 1968, the United States filed a civil antitrust action against Work Wear in the United States District Court for the Northern District of Ohio, claiming that Work Wear, a manufacturer and supplier of work clothes also engaged in industrial laundering and garment rental, had violated section 7 of the Clayton Act, 15 U.S.C. § 18, by acquiring twenty-five affiliated industrial laundries and three manufacturers of work clothing. After issue was joined in that suit, the parties entered into a consent agreement requiring that Work Wear, at its option, divest itself of either eight designated manufacturing facilities or eleven designated industrial laundries by September 23, 1974, and Judge Robert B. Krupansky of the Northern District of Ohio, entered that agreement as a Final Judgment (the Final Judgment). Subsequently, Work Wear filed a notification of its intention to divest itself of the laundries rather than the manufacturing facilities, as part of an agreement under which Judge Krupansky, on September 27, 1974, extended the deadline for divestiture to June 30, 1975. As of July 1, 1975, Work Wear had yet to dispose of seven of the laundries specified in the Final Judgment. Accordingly, the United States, on that date, filed a petition for an order to show cause why Work Wear should not be found in civil contempt, fined and directed to comply with the Final Judgment, as modified. Work Wear filed an opposing petition seeking an extension of time for compliance, a reduction in the number of laundries to be divested and appointment of a trustee if necessary in order to effect the more limited divestiture proposed by Work Wear. On August 15, 1975, Judge Krupansky granted Work Wear a further extension of time to December 31, 1976, based on what he termed "Work Wear's sincere efforts to timely accomplish complete divestiture,"

but he warned that failure to comply fully by that date would constitute a contempt of court for which a fine of $5,000 per day would be imposed. All other relief requested by the parties was denied.

When Work Wear again proved unable to complete the necessary divestiture by the modified deadline, Judge Krupansky, by order dated January 15, 1977, found Work Wear in civil contempt and imposed a daily fine of $5,000 commencing January 1, 1977. Work Wear finally sold its laundries on June 26, 1977, pursuant to a June 13, 1977 agreement with ARA Services, Inc. (ARA). By that date, Work Wear had incurred a fine of more than $1 million under Judge Krupansky's January 15, 1977 order.

The July 26, 1977 divestiture was accomplished through several transactions as follows:

(1) the transfer of Work Wear's domestic and foreign manufacturing operations and Canadian rental service business to Work Wear Corporation, Inc. (New Work Wear), its wholly-owned subsidiary;

(2) the spin off of all of New Work Wear's common stock to Work Wear common shareholders; and

(3) the merger of Work Wear's industrial laundry subsidiary (then its only asset) into ARA.

Upon completion of these transactions, on August 3, 1977, the United States and Work Wear entered into a stipulation that Work Wear's divestiture obligations under the Final Judgment had been "fully and finally performed on July 26, 1977." Judge Krupansky adopted that stipulation in an order filed the next day.

The instant action was commenced in October of 1976. In his original complaint, Zeiler asserts two causes of action. In the first such cause of action, it is claimed that an event of default has occurred under paragraph 4(f) of the debentures, which reads as follows:

4. In case one or more of the following Events of Default shall have occurred and be continuing, that is to say:

\*　　\*　　\*　　\*　　\*　　\*

(f) if [Work Wear] shall, on a petition in bankruptcy filed against it, be adjudicated a bankrupt or a court of competent jurisdiction shall enter an order or decree appointing, without the consent of [Work Wear], a receiver of [Work Wear] or of the whole or substantially all of its property, or approving a petition filed against it seeking reorganization or arrangement of [Work Wear] under the Federal bankruptcy laws or any other applicable law or statute of the United States of America or any State thereof, and such judgment, order or decree shall remain in force undischarged and unstayed for a period of 60 days;

then and in each and every such case, unless the principal of all the Debentures shall have already become due and payable, the holder hereof, by notice in writing to [Work Wear], may declare the principal hereof and the interest accrued thereon, to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, anything in this Debenture to the contrary notwithstanding.

Zeiler's contention is that issuance of the Final Judgment constituted a decree approving a petition seeking reorganization of Work Wear within the meaning of paragraph 4(f). Zeiler asserts on information and belief in his second cause of action that Work Wear intended to "spin off" its domestic rental operation to its shareholders and that the operation would then be merged into ARA, a procedure which he maintains imperiled his secured position and therefore amounted to a breach of Work Wear's implied covenants of "good faith, fair dealing and cooperation, and its convenant of necessary implication that the assets of [Work Wear] would not be intentionally or constructively altered."

A "supplemental and amended complaint" containing three further causes of action was filed on August 16, 1977 pursuant to a stipulation between the parties. In the third cause of action, Zeiler claims that Judge Krupansky's January 15, 1977 order also constituted a decree approving a petition seeking reorganization within the meaning of paragraph 4(f) of the debentures. The fourth cause of action alleges that Work Wear breached its implicit and implied covenants by incurring fines for contempt, and the fifth and final cause of action alleges that those covenants were also breached by the merger of Work Wear into ARA.

## DISCUSSION

Zeiler's first and third causes of action are predicated on the notion that the language of paragraph 4(f) is broad enough to include as an event of default settlement of an antitrust action under a consent agreement requiring divestiture of part of Work Wear's holdings. In this regard, Zeiler argues that any ambiguity must be resolved against Work Wear as the author of the provision. See, e. g., 67 Wall Street Co. v. Franklin National Bank, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 918, 333 N.E.2d 184, 187 (1975); Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 348, 126 N.E.2d 271, 273 (1955); 4 Williston on Contracts § 621 (3d ed. 1961). While it is true that this general rule of contractual interpretation applies to obligations found in debentures, the central task of the court is always to discern the actual intent of the parties, not to penalize any of them for failing to clarify the meaning of a given provision. The terms of the debentures must therefore be "fairly construed in the light of the context and all surrounding circumstances," no matter who was responsible for drafting them. Buchman v. American Foam Rubber Corp., 250 F.Supp. 60, 75 (S.D.N.Y.1965).

In this regard I note that, contrary to Zeiler's assertions, the Final Judgment did not require a reorganization of Work Wear, for Work Wear's obligations under that document were limited to selling, through one or more transactions, certain companies which it operated. Reorganization would have involved operating the firm with all of its properties intact while making arrangements to alter its capital

and debt structure. 15 Fletcher, Cyclopedia of Corporations § 7200 (Perm. ed. 1973).[1] Moreover, even if it is assumed that the divestiture order did not require some sort of reorganization, it is clear that it was not the type of occurrence contemplated under paragraph 4(f) of the debentures since events of default are not incorporated into indenture provisions as a trap for the unwary, but rather because occurrence of them would "so likely . . . jeopardize the future payments of principal and interest on the debenture investment as to warrant a demand for . . . immediate repayment and a suit based thereon." *See* American Bar Foundation, Commentaries on Indentures 204 (1971). It is common practice to include failure to pay interest or principal when due, bankruptcy, receivership or insolvency and continued breach of specified covenants or warranties despite notice requiring performance as events of default under an indenture or debenture, *see, e. g.,* American Bar Foundation, Model Debenture Indenture Provisions All Registered Issues § 501 (1967); *id.,* Model Debenture Indenture Provisions § 501 (1965) (Model Provisions); 19 Fletcher, *supra,* at 373–74 (Perm. ed. 1975), S. E. Quindry, Bonds and Bondholders, app. 4, art. VIII, sec. 1 (1934), however, such events are in marked contrast to the "event" relied upon by Zeiler—the series of transactions described earlier—since Zeiler's security position was actually substantially improved by ARA also becoming obligated to pay principal and interest on the debentures. *See* Affid. of Carl H. Hulsman, Controller of Work Wear, sworn to October 25, 1977, at 7.

Significantly, the language relied upon by Zeiler is similar to that employed in the American Bar Foundation's Model Provisions, which define an Event of Default, in pertinent part, as

the entry of a decree or order by a court having jurisdiction in the premises adjudging the Company a bankrupt or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of the Company under the Federal Bankruptcy Act or any other applicable Federal or State law

. . .

Yet in adopting that language, which was expected to become boilerplate,[2] the American Bar Foundation never once suggested that it was meant to be anything other than a bankruptcy provision. Indeed, when forced divestitures of assets in antitrust proceedings *are* discussed in the Commentaries, it is in terms of negotiated covenants barring the sale of assets and parallel provisions declaring continued breach of covenants to be events of default. *See* Commentaries on Indentures at 205. No such covenants appear in the debentures which form the subject matter of this lawsuit.

That paragraph 4(f) was not intended to extend to the events relied upon by Zeiler is further demonstrated by examination of the other provisions of the debentures. For example, paragraph 4(e) of the debentures tracks the language of paragraph 4(f),[3] but refers to *voluntary* reorganizations or arrangements, proceedings which are, of course, quite common in the bankruptcy context and equally unheard of under the antitrust laws. Also, paragraph 3 of the debentures makes reference to reorganizations in delineating Zeiler's right to share with holders of "senior debt," and other creditors, in any voluntary or involuntary distribution of Work Wear's assets. Since these other provisions regarding "reorganization" of Work Wear would not apply in the context of a court-ordered divestiture

---

1. I do not consider it significant that Work Wear sought a ruling from the Internal Revenue Service that the transactions by which it proposed to accomplish divestiture would qualify for tax-free treatment under the Internal Revenue Code. *See generally Cortland Specialty Co. v. Commissioner,* 60 F.2d 937, 939–40 (2d Cir. 1932), *cert. denied,* 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975 (1933).

2. 1967 Model Provisions at 13.

3. Paragraph 4(e) provides that it shall be an Event of Default—

    if the Company shall file a petition or answer seeking reorganization or arrangement under Federal bankruptcy laws or any other applicable law or statute of the United States of America or any State thereof . . .

under the antitrust laws, plaintiff's expansive interpretation of the term under paragraph 4(f) of the debentures is manifestly unwarranted.

■ Plaintiff's assertion that paragraph 4(f) must extend to the antitrust laws in view of the reference to reorganization or arrangement under the Federal bankruptcy laws or *"any other applicable [state or federal] law or statute"* is misguided. Although it is true that Work Wear would, in the event of bankruptcy, be subject to the terms of the Federal Bankruptcy Act, 11 U.S.C. § 1 *et seq.*, the reference to other state or federal laws is readily explained by the boilerplate nature of the entire paragraph and the existence of other statutory provisions which might be applicable to a reorganization arising out of insolvency. *See, e. g.,* 12 U.S.C. § 1464 (reorganization of federal savings and loan associations); 15 U.S.C. § 80a–25 (reorganization of registered investment company); N.Y. Banking L. § 610 (McKinney 1971) (reorganization of banks); N.Y.Bus.Corp.L. § 808 (McKinney 1963) (right of corporation to effect reorganization pursuant to federal court order without approval of shareholders or directors). Indeed, even if there were no such statutes, and the intent of the paragraph were therefore somewhat unclear, under New York law the Court would still be obliged to limit the expansive phrase relied upon by Zeiler to the confines of the specific language which precedes it, *William Higgins & Sons, Inc. v. State,* 20 N.Y.2d 425, 284 N.Y.S.2d 697, 231 N.E.2d 285 (1967); *World Exhibit Corp. v. City Bank Farmers Trust Co.,* 270 App.Div. 654, 657, 61 N.Y.S.2d 889, 892 (2d Dep't), *aff'd,* 296 N.Y. 586, 68 N.E.2d 876 (1946); *Bristol v. Cornell University,* 237 App.Div. 771, 774, 263 N.Y.S. 380, 384 (3d Dep't 1933), and therefore to reorganizations under the Bankruptcy Act.

The Court accordingly concludes that neither the Final Judgment nor the January 15, 1977 order constitutes an order or decree approving a petition seeking reorganization within the meaning of paragraph 4(f) of the debentures, and Zeiler's first and third causes of action are dismissed.

■■ Zeiler's remaining causes of action do not merit extensive consideration. Although it is alleged in the second and fifth causes of action that both the proposed agreement with ARA and that which was ultimately consummated violated various implicit and implied covenants by Work Wear, both the spin off and merger elements of those agreements were authorized, respectively, by paragraphs 6 and 10 of the debentures. Zeiler maintains that those paragraphs are superseded by paragraph 4(f), which contains the blanket phrase "anything in this Debenture to the contrary notwithstanding," but those words do not indicate, as Zeiler suggests, that paragraph 4(f) governs. Rather, they merely express the intention of the parties that Work Wear, in the event of a continuing default, was to pay principal and accrued interest to a debenture holder immediately upon receipt of a written demand, "notwithstanding" the otherwise applicable payment provisions of the debentures.[4] Turning to the fourth cause of action, to the extent that it states a claim upon which relief can be granted, it is for waste or mismanagement of corporate assets and must be brought on behalf of Work Wear, not for the personal benefit of one of its shareholders or creditors. Therefore, since Zeiler seeks an individual recovery under the fourth cause of action, it too must be dismissed. *See Berzin v. Litton Industries, Inc.,* 24 A.D.2d 740, 263 N.Y.S.2d 485 (1st Dep't 1965); *Winthrop Products Corp. v. Damsky,* 275 App.Div. 755, 87 N.Y.S.2d 640 (1st Dep't 1949); *Hyde v. Everett Van Kleeck & Co.,* 17 Misc.2d 375, 190 N.Y.S.2d 914 (Sup.Ct.1959); *November v. National Exhibition Co.,* 10 Misc.2d 537, 541, 173 N.Y.S.2d 490, 495 (Sup. Ct.1958); N.Y.Bus.Corp.L. § 720 (McKinney 1963).

As a consequence, Work Wear's motion is granted in its entirety and the complaint is dismissed.

SO ORDERED.

---

4. Under the debentures, which are dated October 1, 1968, Work Wear promised to pay the principal sum on October 1, 1988 and interest on that sum quarter-annually.